THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLEMIE LINER, Defendant-Appellant.

Third District   No. 3—90—0602

Opinion filed November 21, 1991.

HAASE, J., dissenting.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The trial court found the defendant, Clemie Liner, guilty of retail theft (Ill. Rev. Stat. 1989, ch. 38, par. 16A—3(a)). His prior conviction for retail theft was subsequently proved up and the court convicted him of a Class 4 felony. The court imposed an 18-month term of imprisonment. The defendant appeals.

At trial, police officer Marshall Dunnigan testified that he and Officer Vincent Wieland were seated in their squad cars near a Walgreens store on the night in question. They were talking to each other when they observed the defendant and Darvis "Pookey" Thornton walking together. Officer Dunnigan suggested that Officer Vincent should familiarize himself with Pookey.

So that Vincent could get a better look, the officers drove to the Walgreens store which they had observed the defendant and Pookey enter. According to Dunnigan, as he and Marshall entered Walgreens, Pookey was hurrying out of the store, holding something under his coat. Dunnigan heard someone yelling that a black male had just stolen his

wallet. He then chased Pookey, but was unable to catch him. Dunnigan came across a broken bottle of whiskey on the street during his pursuit of Pookey, but did not observe him drop it.

Officer Vincent Wieland's testimony corroborated Dunnigan's. He added that he believed Pookey was carrying a liquor bottle when exiting Walgreens, because he saw dark-colored glass in Pookey's jacket and his hand holding it underneath the hem. As Wieland was chasing Pookey, he saw him throw a bottle away. A search resulted in the recovery of a broken bottle of Seagrams whiskey.

As the officers searched for Pookey, the defendant approached Officer Wieland and told him that the man they had been chasing had stolen his wallet at Walgreens. When Wieland asked the defendant if he knew the subject, the defendant denied knowing him. Wieland then placed the defendant under arrest and took him back to Walgreens, where the clerk identified him. After Officer Wieland read the defendant his rights, the defendant said he understood them and wished to talk with Wieland.

The defendant first told Wieland that when he had laid his wallet on the counter at Walgreens to purchase some beer, an unknown black male had taken the wallet and run away. When Wieland told the defendant that he had seen him with Pookey before they entered the store, the defendant changed his story. He admitted that he and Pookey had intended to steal a fifth of Seagrams from the store. The defendant's role was to create a disturbance, which he did by claiming Pookey had stolen his wallet. The defendant also told the officers that Pookey had been staying with him and they could probably find him at the defendant's home. The officers went to the defendant's address and arrested Pookey.

Scott Toft, the Walgreens liquor clerk on duty at the time of the incident, testified that the defendant and another black man had come into the store together. After they brought a bottle of Seagrams gin to the counter, one man had accused the other of stealing his wallet and a loud argument had ensued for approximately three to five minutes. Toft's attention was on the men the whole time. Toft stated that he motioned to his manager to come over and escort them out, but the two men left on their own. The bottle of Seagrams gin remained on the counter when they left. Toft noted that he did not see anyone take anything from the store.

At the close of evidence, the trial court found the defendant guilty of retail theft. On appeal, the defendant argues that he was not proven guilty beyond a reasonable doubt since the State failed to show that the Walgreens store was missing any merchandise.

It is well established that on review of a conviction, this court must examine all the evidence in the light most favorable to the State to de-

termine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) It is also well settled that the State must prove each element of the crime charged beyond a reasonable doubt. (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068.) In particular, the State must prove the following essential elements of retail theft: (1) that the defendant knowingly took possession of, carried away, transferred, or caused to be carried away or transferred, any merchandise; (2) that the merchandise was displayed, held, stored, or offered for sale in a retail mercantile establishment; and (3) that the defendant intended to retain such merchandise, or intended to deprive the merchant permanently of the possession, use, or benefit of such merchandise, without paying the full retail value of such merchandise. *People v. Wynn* (1980), 84 Ill. App. 3d 591, 406 N.E.2d 35.

After reviewing the evidence in the light most favorable to the prosecution, we conclude that the defendant's conviction must be reversed due to the State's failure to prove, beyond a reasonable doubt, the second element of retail theft listed above. The record reveals that the State did not offer any evidence that the Walgreens store was missing any merchandise. Toft, the Walgreens clerk, did not testify that anything was missing from the store. In fact, he affirmatively stated that he did not see the defendant or Pookey take anything from the store. Additionally, although Officer Wieland testified that he saw Pookey throw a bottle during the chase, which the officers later discovered was a broken bottle of Seagrams whiskey, the State did not offer any evidence to connect that particular bottle to the Walgreens store. In fact, the State did not introduce any of the bottle fragments into evidence at trial. We believe that something more was required to show that the whiskey bottle had actually come from the Walgreens store and was not already in Pookey's possession when he entered the store. Under these circumstances, we conclude that the State's evidence left a reasonable doubt about the defendant's guilt.

The judgment of the circuit court of Peoria County is reversed.

Reversed.

GORMAN, J., concurs.

JUSTICE HAASE, dissenting:

I hereby respectfully dissent from the opinion of the court in this case. The commission of any offense may be established entirely by circumstantial evidence. (*People v. Williams* (1977), 66 Ill. 2d 478, 484.)

Circumstantial evidence is defined as the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. See Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. Supp. 1989).

In this case the defendant admitted that he and Darvin "Pookey" Thornton entered the Walgreens store with the intent to create a diversion and steal alcohol. The evidence showed that the two men entered the store and did create a diversion. Officer Wieland testified he saw "Pookey" carrying what he believed to be a liquor bottle out of the store. Wieland testified that "Pookey" had the bottle under the hem of his jacket. As Wieland chased "Pookey," he saw "Pookey" throw a bottle away. A search of the area turned up a broken bottle of Seagrams whiskey. This happened to be the exact same type of alcohol and the same brand of whiskey the defendant admitted he and "Pookey" intended to steal.

The majority opinion concludes that the defendant's conviction must be reversed because of the State's failure to prove, beyond a reasonable doubt, that the merchandise in question was displayed, held, stored, or offered for sale in a retail mercantile establishment. They opine that the case is fatally defective on this element of proof due to the fact that no one from the Walgreens store testified that anything was missing from the store. They further rely on the fact that Toft, the Walgreens clerk, did not testify that anything was missing from the store. The majority analysis seems to require that someone see a defendant take the product from the store (i.e., have direct evidence of the theft) or that the store personnel be able to testify that a specific item was missing. In a situation in which no one sees the actual theft, the majority view would require something akin to an inventory of the department in order to establish whether or not an item was gone. That is a burden which I do not believe the law requires the prosecution to undertake.

In this case there was overwhelming circumstantial evidence of the intent of the defendant to steal the item. There was also overwhelming circumstantial evidence that the defendant and a co-conspirator entered the store to steal a bottle of Seagrams whiskey and that they caused a diversion in order to accomplish that. There is also strong evidence that when the codefendant left the store he was carrying the very type of item which he is accused of taking and that he threw it away when observed by the police. In my opinion, there was more than sufficient evidence to satisfy the test stated by our supreme court in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267. Under that test, when the court examines all the evidence in the light most favorable to the State, the court must determine whether any rational trier of fact could have found

the defendant guilty beyond a reasonable doubt. Upon a review of the record in this case, it is my opinion that the trier of fact could have so found the defendant guilty beyond a reasonable doubt. Accordingly, I respectfully dissent from the majority opinion herein.