THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELICIA THARPE-WILLIAMS, Defendant-Appellant.

Second District    No. 2—96—0010

Opinion filed February 19, 1997.

606

RATHJE, J., concurring in part and dissenting in part.

Cynthia R. Lyons, of Law Offices of Cynthia R. Lyons, of Naperville, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Bradley S. McMillan, of Heiple & McMillan, of Peoria, for the People.

JUSTICE BOWMAN delivered the opinion of the court:
Defendant, Felicia Tharpe-Williams, was convicted following a

bench trial of retail theft (720 ILCS 5/16A—3(a) (West 1994)). The trial court sentenced her to one year of court supervision and fined her $100 plus court costs. Defendant now appeals her conviction. We affirm.

The following is a summary of the trial evidence relevant to the issues on appeal. Wal-Mart maintains a security office in its store in Darien, Illinois. The office contains numerous video monitors which are connected to video cameras located throughout the store. At the same time that the images are relayed from the video cameras and sent (and displayed) on the video monitors, the images are also recorded on a videotape.

Eric Berg, a loss prevention agent for Wal-Mart, testified that on June 16, 1995, he was observing the video monitors in the security office. For the previous two weeks, he had been investigating Sandra Knight, who worked behind the courtesy desk. At approximately 3 p.m. on June 16, Berg saw defendant on the video monitor approach Knight and place a large number of items on the courtesy desk. Defendant was also employed by Wal-Mart. Knight began to scan some of the items. Defendant then walked out of the picture, and Knight began to place some items that she had not scanned in a Wal-Mart bag.

Berg further testified that defendant then reentered the picture with a McDonald's bag (McDonald's operated a stand inside the Wal-Mart) and placed the McDonald's bag in the seat of her cart. Defendant then took two unscanned items, a bottle of cologne and a can of deodorant, which were on the courtesy desk, and placed them in the McDonald's bag. The bottle of cologne was a sample bottle for the customers' use; it contained a label from the vendor stating that the bottle was a tester and not for resale. No sales receipt for either item was found in the McDonald's bag. Berg then saw Knight placing additional unscanned items into Wal-Mart bags. Defendant was present and facing Knight when Knight failed to scan some of the items and placed them in the Wal-Mart bags. Although not entirely clear from the record, defendant apparently did write a check (in the approximate amount of $60) for some of the merchandise.

At this point, Berg notified his supervisor, Mick Pinneke, about what was occurring. Pinneke directed Berg to do a receipt check to make sure that all the items were paid for. Defendant was then detained, and the receipt check revealed that there were items in the bags that were not accounted for on the receipt. Berg then prepared a receipt of the items defendant had not paid for; the total amount of the unpaid items was $18.67.

According to Berg, Wal-Mart has an unwritten policy, which is

disclosed to employees during their orientation, that employees should make purchases at the registers and not at the courtesy desk. There are no registers between the courtesy desk and the exit doors. Also, Wal-Mart did not have a policy of giving its employees tester items. Berg did not know if defendant and Knight talked to each other during this incident because he could only see the back of defendant's head.

Mick Pinneke, a district loss supervisor for Wal-Mart, testified that, while watching the video monitor, he saw Knight place unscanned merchandise into a Wal-Mart bag. Defendant was facing Knight when this occurred. According to Pinneke, defendant was violent after she was detained by store security; she threw merchandise, pushed a shopping cart at Pinneke, and repeatedly called Knight's name.

Officer Joseph Brady of the Darien police department testified that he arrived at the store after defendant had been detained by store security. Officer Brady asked defendant how the unscanned items got into the McDonald's bag and the Wal-Mart bag. Defendant replied that she did not know. Officer Brady also testified that Knight told him that she did not scan certain items for defendant.

Defendant did not present any evidence in her case in chief. The trial court subsequently found her guilty of the offense of retail theft and sentenced her to one year of court supervision and fined her $100 plus court costs.

Defendant has three contentions on appeal: (1) the trial court erred in failing to exclude the testimony of Berg and Pinneke; (2) she was not proved guilty beyond a reasonable doubt; and (3) the trial court erred in finding her guilty on a theory of accountability.

Defendant's first contention on appeal is that the trial court erred in failing to exclude the testimony of Berg and Pinneke. Defendant posits essentially two arguments in support of this contention: (1) Berg's and Pinneke's testimony was inadmissible hearsay; and (2) Berg's and Pinneke's testimony violated the best evidence rule.

■ We first address defendant's argument that Berg's and Pinneke's testimony constituted inadmissible hearsay testimony. Berg and Pinneke witnessed the incident at the courtesy desk by watching a contemporaneous telecast of it on the video monitor in the security office. According to defendant, Berg and Pinneke did not have any personal knowledge of what occurred at the courtesy desk; rather, they repeated what the video camera, a third party, had to say. As such, defendant reasons, their testimony constitutes inadmissible hearsay.

Initially, we note that defendant has waived this issue for

purposes of appellate review. Although the issue was raised in her post-trial motion, defendant failed to lodge a specific contemporaneous objection to either Berg's or Pinneke's testimony. Accordingly, the issue is waived. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (an issue is waived if it is not raised both in a trial objection and in a written post-trial motion).

Waiver aside, we find defendant's argument to be meritless, albeit novel. Hearsay evidence is in-court testimony of an out-of-court statement, which is offered to establish the truth of the matter contained in the statement, and the value of which rests on the credibility of someone other than the witness. *In re E.M.*, 262 Ill. App. 3d 302, 309 (1994). Here, defendant assumes that the video camera that telecast the incident was the source of an out-of-court statement. We disagree.

Defendant does not cite, and we have not located, any Illinois case law that addresses this issue. Nevertheless, it is axiomatic that an out-of-court statement must be made by a person or writing, not by an object such as a video camera. Hearsay evidence is inadmissible because it relies upon the credibility of someone other than the witness. In other words, hearsay evidence is considered untrustworthy because the declarant is not subject to cross-examination. See *People v. Holman*, 103 Ill. 2d 133, 148 (1984) ("The fundamental purpose of the hearsay rule is to test the value of assertions by exposing the source of the assertion to cross-examination by the party against whom it is offered"); see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.1, at 636-37 (6th ed. 1994). In the context of hearsay evidence, however, credibility and trustworthiness are characteristics peculiar to people or documents written or generated by people. Objects such as a video camera neither have nor lack credibility or trustworthiness. If properly operated, there is no reason to suspect that images received from a video camera and displayed on a video monitor are unreliable. As such, the underlying basis for excluding hearsay evidence does not apply to "out-of-court statements" made by a video camera. *Cf. People v. Holowko*, 109 Ill. 2d 187, 193 (1985) (records produced by computerized telephone-call tracing equipment without manual or human intervention are not hearsay evidence). Hence, Berg's and Pinneke's testimony was not inadmissible hearsay.

Of course, a witness' testimony regarding what he observed while viewing a contemporaneous, live telecast of an incident requires foundational proof that the video system was functioning properly. Defendant, however, does not, and did not before the trial court, maintain that the video system in this case was functioning

improperly on the day of the incident. Accordingly, we need not consider whether a proper foundation was laid for Berg's and Pinneke's testimony regarding what they observed on the video monitor.

■ We next address defendant's argument that Berg's and Pinneke's testimony violated the best evidence rule because the videotape of the incident was not submitted into evidence. As before, defendant has waived this argument by failing to lodge a contemporaneous objection to the testimony and by failing to raise it in her post-trial motion. See *Enoch*, 122 Ill. 2d at 186.

Even if the issue were not waived, we are convinced that the best evidence rule has no application to the circumstances involved here. The best evidence rule states a preference for the production of the original of documentary evidence when the contents of the documentary evidence are sought to be proved. *Jones v. Consolidation Coal Co.*, 174 Ill. App. 3d 38, 42 (1988). There is no general rule that a party must produce the best evidence that the nature of the case permits. *Jones*, 174 Ill. App. 3d at 42. The best evidence rule does not apply where a party seeks to prove a fact that has an existence independent of the documentary evidence, even though the fact might have been reduced to, or is evidenced by, the documentary evidence. *Jones*, 174 Ill. App. 3d at 42. For instance, an individual who hears a defendant's confession may testify to it even though the confession may have been simultaneously transcribed by a court reporter. *People v. Spencer*, 264 Ill. 124, 137-38 (1914).

In this case, Berg's and Pinneke's testimony sought to prove a fact that was independent of the videotape of the incident, *i.e.*, that they observed defendant place unpaid items in her bag as well as accept a bag with unpaid items. In other words, they sought to testify not to the contents of the videotape, but to an incident they observed on the video monitor. Just as the individual who hears a confession may testify that the defendant confessed, even though the confession was simultaneously transcribed by a court reporter, so too could Berg and Pinneke testify to what they saw defendant do, even though that incident was simultaneously recorded on videotape. Although the videotape of the incident " 'might be more reliable and satisfactory evidence under ordinary circumstances than testimony from memory, the latter is not rendered incompetent by the fact of the existence of the former.' " *Anderson v. State*, 704 P.2d 499, 502 (Okla. Crim. App. 1985), quoting *People v. Kulwin*, 102 Cal. App. 2d 104, 109, 226 P.2d 672, 674 (1951); see *Jones*, 174 Ill. App. 3d at 42.

Moreover, the fact that Berg and Pinneke only observed the incident because it was telecast by a video camera is irrelevant. Berg and Pinneke observed the incident on the video monitor at the same

time it was occurring. As such, they testified to facts based on their personal observations. The situation is no different than if Berg and Pinneke had been 100 yards away from defendant at the time of the incident but they needed a telescope to observe what was happening. As long as the telescope was functioning properly, we see no reason why they would not be able to testify as to what they observed. Similarly, as long as the video system was functioning properly, Berg and Pinneke could testify as to what they observed on the video monitor. Because defendant never contested below that the video system was functioning improperly, Berg's and Pinneke's testimony was properly admitted.

Of course, if Berg and Pinneke had attempted to testify as to the contents of the videotape, then the best evidence rule would have required that the videotape be authenticated and admitted into evidence. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 1002.1, at 836-37 (6th ed. 1994). However, they did not attempt to testify as to the contents of the videotape. Thus, the best evidence rule does not apply. See *Pennsylvania v. Lewis*, 424 Pa. Super. 531, 537, 623 A.2d 355, 358-59 (1993) (best evidence rule barred police officer from testifying about the contents of a videotape; police officer did not witness the alleged act of retail theft that was supposedly recorded on the videotape).

Defendant's second contention is that she was not proved guilty of the offense of retail theft beyond a reasonable doubt. In support of this contention, defendant emphasizes that she was not present during part of the incident, that Berg and Pinneke did not see her talking with Knight, and that Berg's testimony was not substantially corroborated by Pinneke's.

■ When faced with a challenge to the sufficiency of the evidence, the reviewing court applies the standard set forth in *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under *Collins*, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). It is the province of the trier of fact to draw reasonable inferences from the evidence, and we may not overturn a finding of guilt unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Cunningham*, 265 Ill. App. 3d 3, 5 (1994).

■ Defendant was charged with committing the offense of retail

theft in violation of section 16A—3(a) of the Criminal Code of 1961 (720 ILCS 5/16A—3(a) (West 1994)). To establish a violation of section 16A—3(a), the State must prove: (1) that the defendant knowingly took possession of, carried away, transferred, or caused to be carried away or transferred, any merchandise; (2) that the merchandise was displayed, held, stored, or offered for sale in a retail mercantile establishment; and (3) that the defendant intended to retain such merchandise or intended to deprive the merchant permanently of the possession, use, or benefit of such merchandise, without paying the full retail value of such merchandise. 720 ILCS 5/16A—3(a) (West 1994); *People v. Liner*, 221 Ill. App. 3d 578, 580 (1991).

■ Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found defendant guilty of retail theft. Berg testified that, although it is company policy that employees purchase store items at the regular cash registers, defendant brought her items to the courtesy desk, the station nearest the exit. Defendant then placed two unrung items into a McDonald's bag. At least one of these items, the sample bottle of cologne, was store merchandise. Moreover, Berg and Pinneke both testified that defendant was facing Knight when Knight failed both to scan some merchandise and then place that merchandise in a Wal-Mart bag. Defendant then took the Wal-Mart bag and the McDonald's bag, but was detained before she could exit the store. A search of the bags revealed that defendant did not pay for several items in the Wal-Mart bag and that she did not have a receipt for the cologne and deodorant in the McDonald's bag. Based on this evidence, a rational trier of fact could infer that defendant knowingly took possession of Wal-Mart's merchandise and that she intended to retain the merchandise without paying the full value of it. Furthermore, and contrary to defendant's assertions, the presence of the stolen merchandise in court, either in person or through photographs, was not required to prove the retail theft. See *People v. Mikolajewski*, 272 Ill. App. 3d 311, 317 (1995). We therefore refuse to disturb defendant's conviction.

■ Defendant's final contention is that the trial court erred in finding her guilty on a theory of accountability. We need not address this contention, however, in light of our foregoing analysis. Assuming, *arguendo*, that the trial court found defendant guilty on a theory of accountability for Knight's acts, the record is clear that the trial court also found defendant directly responsible for the offense of retail theft. As the preceding paragraph explains, the evidence was sufficient to sustain this finding of direct guilt. Because we may af-

firm defendant's conviction on the trial court's finding of direct guilt, we need not consider whether defendant was also guilty under a theory of accountability.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE, J., concurs.

JUSTICE RATHJE, concurring in part and dissenting in part:

I agree with the majority view that the testimony of the videotape evidence was not inadmissible hearsay. However, I disagree with the conclusion that the defendant was found guilty of theft as a principal beyond a reasonable doubt.

I observe, first, that there is no evidence of a confession by the defendant in this cause, nor is there any testimony by Sandra Knight, the other employee involved in this cause, implicating the defendant in any theft of merchandise from Wal-Mart. The evidence of the commission of the offense in this cause consists of the testimony of two other store employees as to what they saw on the videotape of the incident.

According to the testimony of employees Berg and Pinneke, the defendant placed items to be purchased on the counter and then left the viewing area of the camera. While the defendant was gone, Knight placed unscanned items in a Wal-Mart bag. There was no evidence that the defendant was aware that these items were not scanned prior to their being placed in the bags. When the defendant returned to the viewing area, she had a McDonald's bag with her, and she placed items from the counter in the McDonald's bag. Again, there was no evidence that the defendant was aware that these items had not been scanned prior to placing them in the McDonald's bag. While the defendant was facing Knight, Knight placed more unscanned items into Wal-Mart bags, which the defendant took with her.

Central to the State's proof in this cause is the fact that the defendant was facing Knight with her back to the camera while Knight was placing unscanned merchandise into Wal-Mart bags. However, because there is no audio portion to the videotape, it is only speculation and conjecture as to what went on between the defendant and Knight while the unscanned items were placed into the Wal-Mart bags. The State's version requires us to assume that, at all times, the defendant's attention was fixed on what Knight was doing without actually proving that critical fact.

While it is undisputed that unscanned items were found in the defendant's possession, there is no proof beyond a reasonable doubt that the defendant *knowingly* took possession of the items without paying the full retail value of them. 720 ILCS 5/16A—3(a) (West 1994). As the State's proof that the defendant was aware that the items in her possession were not scanned amounts to conjecture and speculation, I would conclude that the defendant was not found guilty of retail theft beyond a reasonable doubt.