THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MUOI PHUONG, Defendant-Appellant.

First District (1st Division)   No. 1—95—1368

Opinion filed April 14, 1997.

990

O'BRIEN, J., concurring in part and dissenting in part.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant, Muoi Phuong, was found guilty of misdemeanor retail theft and sentenced to one year of supervision with a $90 fine. Defendant appeals, raising the following issues: (1) whether defendant, a Chinese-speaking recent immigrant with minimal education in this country and no criminal history, understandingly waived her right to a jury trial where she was not advised that she could have members of the community decide her guilt or innocence; (2) whether defendant received a fair trial where the trial court expressed its bias by repeated and gratuitous remarks relating to the Chinese language spoken by defendant and a defense witness; (3) whether defendant was deprived of a fair trial when the trial court refused to allow full translation of the testimony of a Chinese-speaking defense witness; (4) whether the trial court unfairly assumed the role of an advocate when it called and elicited hearsay statements from a police officer about receipts recovered from defendant when the officer had observed the entire trial despite an order

to exclude witnesses; (5) whether the testimony of the police officer about the contents of sales receipts recovered from defendant were improperly admitted into evidence where the documents themselves were not produced; (6) whether defendant was proven guilty of retail theft beyond a reasonable doubt where no competent evidence of the *corpus delicti* was presented and where defendant did not know about her companion's shoplifting; and (7) whether the trial court improperly assessed a fine of $90 without inquiring into defendant's ability to pay.

Defendant, Muoi Phuong, is a Chinese-speaking woman who had recently immigrated to the United States and who had received a few months of education in this country. Prior to her being charged with and convicted of retail theft in March 1995, defendant had no criminal record or any dealing with the American criminal justice system.

Before trial, defendant signed a jury waiver form that had been translated by a Chinese interpreter. The trial court informed defendant that she could be tried by either a judge or a jury without further elaboration. When defense counsel informed the trial court that defendant had agreed to a bench trial, the trial court commented "Nothing like a bench trial with a Chinese interpreter." Prior to trial, a motion to exclude witnesses was granted.

Testimony concerning the theft came primarily from a Carson Pirie Scott (Carson's) employee, Veronica Miranda. Miranda testified that on December 2, 1994, she was working at the Carson's in Lincolnwood. On that date, Miranda saw a woman in the department store taking unspecified merchandise from the racks and putting it into her shopping bag. Miranda then saw another woman, identified as defendant, enter the store through the upper mall door and speak with the first woman. The first woman was identified as Hoag Huynh, defendant's friend and co-worker. Huynh laid the merchandise from her shopping bag on the floor and showed the items to defendant. Huynh then gave a long ivory-colored skirt to defendant, who put the skirt into her shopping bag. Miranda testified that the skirt had been for sale at Carson's. Miranda did not see defendant take any merchandise off of the racks or put any other items into her shopping bag. Defendant left the store and Miranda did not see her pay for the skirt.

Miranda then followed defendant around the shopping mall and watched her go into other stores. Defendant was apprehended 30 to 40 minutes later by Miranda, who stated that she took custody of defendant and the items in her possession. Huynh was not with defendant when she was apprehended by Miranda. Carson's employees

contacted the Lincolnwood police, who arrived after defendant had been brought to the Carson's security office. The police searched defendant's car and found the skirt there, still inside the shopping bag that defendant had been carrying in Carson's. Miranda testified that Carson's had a videotape recording of the events that had occurred in the store, but that it could not be located for trial.

Miranda testified that defendant told her in English that defendant's friend passed the merchandise to her. Miranda does not speak any Chinese and did not use an interpreter to speak to defendant. Miranda testified that defendant seemed to understand what Miranda was saying to her.

The police arrested both defendant and Huynh and charged them with retail theft. Huynh later pled guilty to the charge. At trial, Huynh testified through a Chinese interpreter that she and defendant were co-workers and that on December 2, 1994, they went to the Lincolnwood mall with a third friend. Huynh stated that she did not see defendant take anything from the store without paying for it. She also testified that she and defendant did not plan together to steal anything from the store, nor did she tell defendant that she was going to steal anything.

Huynh admitted to shoplifting on December 2 but denied that one of the items she stole was a woman's skirt. She claimed that "it was just a nipple for a milk bottle." Over the objection from defense counsel, the trial court instructed the Chinese interpreter not to translate the rest of Huynh's response, stating "She plead [sic] guilty to shoplifting. What other items she took I'm not concerned about really." Huynh denied giving defendant anything to put in her bag. According to Huynh, defendant paid for the skirt and obtained a receipt. She testified that a police officer took the receipt and told the women that the receipt was not from the same day.

Defendant also testified at trial. When she began her testimony, defendant was asked in English to state her name and spell her last name for the record. She did so. Then, defense counsel requested that defendant testify through a Chinese interpreter so that she may be better understood, and the trial court commented, "Miss Public Defender, we're going to be here until the [F]ourth of July." Later in her testimony, defendant responded to the question "On December the 2nd, of 1994, did you steal anything from Carson Pirie Scott?" by shaking her head "no." The trial court stated, "She's shaking her head in Chinese, no." Defendant testified that she paid for the skirt before leaving the store.

Defendant stated that after she was stopped in the mall, neither the police, Miranda, nor any other Carson's employee spoke with her.

The court responded to this line of questioning by stating, "Nobody speaks Chinese that I know of except this lady. So, the policeman doesn't talk to her in Chinese and neither does anybody from Carson's. So what?"

Defendant acknowledged that she understood what the police meant when they showed her the skirt and asked for the receipt. Defendant told the police, "Friend got receipt." Defendant further testified that she did not know who had the receipt now; her friend told her the police took the receipt.

After both the State and the defense had rested their cases, the trial court called Officer Cahill to testify over defense counsel's objections. Officer Cahill had been present in the courtroom during the entire trial. Officer Cahill testified that he obtained receipts from defendant in the course of his investigation. None of the receipts were for the skirt. The receipts were dated a month prior to her arrest and were from Marshall Field's department store. The receipts themselves were not presented at trial. Officer Cahill testified that defendant spoke some English with him, although it was broken English.

The trial court found defendant guilty of retail theft, stating "There's no question in my mind as to the guilt of the defendant with or without English." The court also found that the absence of the Carson's videotape of the alleged theft was not significant. On March 7, 1995, the court sentenced defendant to one year of supervision and imposed a $90 fine. On April 5, 1995, defendant filed a motion for a new trial, which the court denied on April 19, 1995. On that same date, defendant filed timely notice of her appeal.

■ Defendant raises seven distinct issues on appeal; however, the issue of overriding concern is that of personal bias shown by the trial court against defendant. "The right of a defendant to an unbiased, open-minded trier of fact is *** rooted in the constitutional guaranty of due process of law and entitles a defendant to a fair and impartial trial before a court which proceeds, not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial." *People v. Eckert*, 194 Ill. App. 3d 667, 673, 551 N.E.2d 820, 824 (1990). Although a trial judge has great latitude in the courtroom, his or her discretion is not without limit. "The standard of judicial conduct requires a judge to be fair and impartial whether the defendant has a jury trial or a bench trial." *People v. Cofield*, 9 Ill. App. 3d 1048, 1051, 293 N.E.2d 692, 694 (1973). When, as in this case, a judge displays signs of bias against the defendant, the system ceases to function as it properly should, resulting in plain error and requiring reversal. See *People v. Carlson*, 79 Ill. 2d 564, 404 N.E.2d 233 (1980) (when trial error is so prejudicial that the accused has been denied a fair and impartial trial, the doctrine of plain error applies).

■ In this case, the record reveals numerous derogatory statements made by the trial court directed against defendant, her counsel and a defense witness. Upon defense counsel's request for a Chinese interpreter for defendant, the trial court stated "Nothing like a bench trial with a Chinese interpreter." When defendant took the stand in her own defense, the trial court again expressed impatience with the need for an interpreter by stating, "Miss Public Defender, we're going to be here until the [F]ourth of July." After defendant responded to a question by shaking her head, the court stated "She's shaking her head in Chinese, no." While defendant was being asked about any conversations she might have had with the police or Carson's employees immediately following her apprehension, the court interrupted by stating, "What does that establish, Miss Public Defender? Nobody speaks Chinese that I know of except this lady. So, the policeman doesn't talk to her in Chinese and neither does anyone from Carson's. So what?" During the testimony of defense witness Huynh, the trial court refused to allow the interpreter to translate a complete answer, stating "What other items she took I'm not concerned about really." Moreover, the trial court referred to defense counsel as "Miss Public Defender" several times during the trial without ever addressing the female prosecutor in a similar fashion. Finally, in ruling on the evidence, the trial court stated, "There's no question in my mind as to the guilt of the defendant with or without English." We find that these remarks, taken together, establish the trial court's prejudice against defendant.

■ The State attempts to argue that since defendant and defense witness Huynh were able to understand rudimentary English and spell their names for the court in English, the trial court, by its comments, was merely expressing skepticism concerning their need to testify through an interpreter. This argument lacks persuasiveness, however, since it is entirely plausible that although defendant and Huynh displayed an understanding of basic English words and an ability to respond in broken sentences, their mastery of the English language did not rise to the level of being able to testify in court in that language.

■ The State also insists that the trial court's comments do not demonstrate error since there was no jury present to be influenced by their utterances. However, the State is clearly oblivious of the high standard to which judges are held. Judges are required to be fair and dispassionate arbitrators above all else. Accordingly, any showing of bias against one of the parties or her counsel constitutes reversible error. See *Eckert*, 194 Ill. App. 3d at 674, 551 N.E.2d at 824-25 ("The Code of Judicial Conduct prescribes that a judge should

be patient, dignified, and courteous to litigants, jurors and witnesses, lawyers and others with whom he deals in his official capacity"); *People v. Mays*, 188 Ill. App. 3d 974, 982-83, 544 N.E.2d 1264, 1270 (1989) (finding that the trial court demonstrated prejudice against the defendant where the judge slammed a pencil, heaved a sigh and made facial gestures in response to defense counsel's question). It is irrelevant that this was a bench trial and there was no jury to be swayed by the court's comments. The fact that the judge, who was the fact finder in this case, was giving voice to his impatience and sarcasm is enough to show prejudice. See *People v. Ojeda*, 110 Ill. App. 2d 480, 249 N.E.2d 670 (1969) (in a bench trial, the court's improper remarks are prejudicial when they reflect a preconceived attitude about the defendant's guilt). Based on the numerous insulting remarks made by the trial court against defendant, we cannot be sure that defendant received a fair trial by an impartial arbitrator. On this issue alone, we must reverse her conviction. Nonetheless, we will address defendant's remaining claims[1] .

■ We also find that defendant did not knowingly and understandingly waive her right to a jury trial, as evidenced by the record. This right is protected by both the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The trial court has the obligation to ensure that a jury waiver is made with an understanding of the nature of the rights waived, and that duty may not be discharged in a superficial manner. *People v. Sebag*, 110 Ill. App. 3d 821, 828, 443 N.E.2d 25, 30 (1982). See *People v. Smith*, 106 Ill. 2d 327, 333-34, 478 N.E.2d 357, 360 (1985) (also explaining that this issue is not waived by the defendant's failure to include it in his post-trial motion since it affects a substantial right). The determination of whether the trial court has fulfilled its obligation turns on the facts and circumstances of each case and cannot be governed by a mechanistic formula. *People v. Bell*, 104 Ill. App. 2d 479, 480, 244 N.E.2d 321, 322 (1968). An explanation of the ramifications of a jury waiver must be made when the facts and circumstances indicate that a defendant may not understand what the right to a jury trial entails. See *Bell*, 104 Ill. App. 2d at 481, 244 N.E.2d at 322. The trial court is warned to be particularly careful to ascertain whether a jury waiver is made knowingly where a defendant does

---

[1]Having found that the trial court was predisposed against defendant, we need not specifically address defendant's claims that she was prejudiced by the trial court's refusal to allow the translation of Huynh's entire testimony and by the trial court's improper admission of Officer Cahill's testimony regarding the absence of a receipt to bolster the State's evidence.

not speak English. See *People v. Kostatinovich*, 98 Ill. App. 3d 611, 614, 424 N.E.2d 864, 866 (1981).

■ The record here reveals that defendant testified at trial through a Chinese interpreter. Although defendant signed a form jury waiver that had been translated for her, it is unclear that she actually understood what a jury is. The trial court warned defendant about waiving her right to a jury trial, but she was not informed that a jury trial meant that members of the community would serve as fact finders in her case. If defendant did not understand the nature of a jury or its function within the system, then she would not understand the ramifications of her waiver of that right. We simply are not convinced that the mere translation of the language of the waiver form adequately conveyed its meaning to defendant. See *People v. Turner*, 80 Ill. App. 2d 146, 150-51, 225 N.E.2d 65, 67 (1967) (despite an out-of-court conference with the judge, an illiterate defendant did not understandingly waive his right to a jury trial where the judge failed to inquire if defendant knew what a jury trial was).

Moreover, as defense counsel points out, there is nothing to indicate that defendant had any prior experience with the American judicial system to warrant an understanding of a jury trial. Defendant had only a few months of education in this country and had no prior criminal record or any involvement with the criminal justice system. See *Sebag*, 110 Ill. App. 3d at 829, 443 N.E.2d at 31 (where the defendant was not advised of the meaning of a jury trial and was not familiar with criminal proceedings, the record did not establish that the defendant understandingly waived his right to a jury trial). Thus, we agree that defendant did not knowingly waive her right to a jury trial.

■ We next find that the State failed to prove defendant guilty of the crime charged beyond a reasonable doubt. The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Young*, 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472-73 (1989). For the offense of retail theft, the State must prove the following elements: (1) the defendant knowingly took possession of, carried away or caused to be carried away, any merchandise; (2) the merchandise was displayed, held, stored, or offered for sale in a retail mercantile establishment; and (3) the defendant intended to retain such merchandise, or intended to deprive the merchant permanently of the possession, use, or benefit of such merchandise, without paying the full retail value of such merchandise. *People v. Liner*, 221 Ill.

App. 3d 578, 580, 582 N.E.2d 271, 272 (1991). Under Illinois law, proof of the *corpus delicti* may not rest exclusively on a defendant's confession or statement, but rather the State must present evidence apart from that which tends to show the commission of the offense and which corroborates the confession. *People v. Howard*, 147 Ill. 2d 103, 126-27, 588 N.E.2d 1044, 1052-53 (1991).

■ In this case, not only did defendant's statement to Miranda fail to constitute a confession, but the State produced no independent evidence tending to show that defendant committed retail theft. Miranda's testimony that defendant told her that her friend passed her the merchandise does little to incriminate defendant since the State failed to show that defendant was even aware that Huynh had stolen the skirt. In fact, Huynh testified that she and defendant had not planned together to steal anything from the store, nor did she tell defendant that she was going to steal anything. Absent some showing by the State that defendant knowingly took the skirt and intended to keep it without paying for it, defendant cannot be found to have committed retail theft. That defendant merely ended up with the skirt in her possession will not suffice.

Miranda testified that Carson's had a videotape of the entire incident but that it had been misplaced prior to trial. It seems to us that if the State could have presented a videotape that showed defendant committing the offense, it certainly would have done so. That it failed to do so indicates that the tape contained no incriminating evidence. Miranda further testified that Carson's did sell the ivory skirt found in defendant's possession, but the State failed to assert that sales tags were on the skirt when defendant received it. It is possible that if the tags had been removed from the skirt prior to the time that Huynh "passed" it to defendant, defendant would have no reason to know, or even suspect, that the merchandise had not been paid for. Because the State presented no competent evidence at trial that showed that defendant perpetrated retail theft, the State failed to prove defendant guilty of the offense charged beyond a reasonable doubt.

For the foregoing reasons, we reverse defendant's conviction. The issue of the $90 fine is therefore moot.

Reversed.

CAMPBELL, P.J., concurs.

JUSTICE O'BRIEN, specially concurring in part and dissenting in part:

I concur with the majority on one issue only: that the comments of the trial court regarding defendant's use of a foreign language cast doubt upon the fairness and impartiality of the trial court and, thus, this cause should be reversed. Although the cases cited by the majority contain a more troubling situation than the case at bar, fundamental fairness dictates such a result. However, unlike the majority, I would remand for a new trial as there is sufficient evidence to find defendant guilty beyond a reasonable doubt.

On review, when confronted with a challenge to the sufficiency of the evidence, the relevant inquiry for a reviewing court is whether, after viewing the evidence in the light most favorable to the People, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). A court of review applies this standard regardless of whether the evidence is direct or circumstantial. *People v. Pintos*, 133 Ill. 2d 286, 549 N.E.2d 344 (1989). The reviewing court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight to be assigned evidence or the credibility of witnesses. *People v. Campbell*, 146 Ill. 2d 363, 586 N.E.2d 1261 (1992). Accordingly, a judgment of conviction will not be disturbed unless the evidence presented at trial is so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citation]." *Campbell*, 147 Ill. 2d at 375.

Despite the assertion of the majority that the People's case rested solely upon the statements of the defendant, the People's evidence was that an eyewitness saw the defendant stop and speak with a friend within Carson's, take possession of and carry away merchandise of Carson's that had been offered for sale and fail to pay for that merchandise. The skirt was found in defendant's car in the same shopping bag in which she had placed it. Additionally, in defense, defendant testified she paid for the skirt before leaving the store and that her friend received the receipt. Her friend testified defendant paid for the skirt and defendant received the receipt. Her friend further testified that she never gave anything to defendant to take from the store. Any rational trier of fact, when viewing this evidence, the inferences drawn from it and the credibility of the witnesses in the light most favorable to the People, could have found the essential elements of the offense beyond a reasonable doubt. Accordingly, a remand is appropriate.

Finally, the majority makes three comments that are troubling. First, it addresses the issue of the knowing understanding of the jury

waiver when, clearly, the defendant has waived this issue by failing to mention it in her post-trial motion. *People v. Enoch*, 122 Ill. 2d 176, 22 N.E.2d 1124 (1988). Second, the majority asserts that the failure of the People to present a videotape of the occurrence indicates the tape contains no incriminating evidence. The majority cites no reported case holding such a presumption as a matter of law. And, the record shows the tape was merely misplaced. Third, the majority asserts that the trial court's reference to the female public defender as "Miss Public Defender" without addressing the female prosecutor in the same fashion is indicative of actual bias by the court. Perhaps, the trial court just did not know the lawyer's name. In any event, the majority cites no reported case holding that we must presume the term "Miss Public Defender" is indicative of actual bias by the court. Accordingly, I concur in part and dissent in part.