*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-CM-307

MARVIN HOLMES, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-21847-12)

(Hon. Juliet J. McKenna, Trial Judge)

(Argued April 17, 2014                                    Decided June 5, 2014)

*Edward E. Schwab* for appellant.

*Sandra Talbott*, Assistant United States Attorney, for appellee. *Ronald C. Machen, Jr.*, United States Attorney, *Elizabeth Trosman*, *Elizabeth H. Danello*, and *SuzAnne C. Nyland*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*:  On December 24, 2012, Marvin Holmes was charged by criminal information with theft of two shirts from a Saks Fifth Avenue men's clothing store in the Friendship Heights neighborhood of Northwest Washington, D.C., in violation of D.C. Code §§ 22-3211, -3212 (b) (2012 Repl.).  Following a

February 21, 2013 bench trial, Holmes was found guilty of that charge and sentenced to sixty days of incarceration, all suspended, and supervised probation for one year. He argues on appeal that the store detective's testimony about what he saw on the store's surveillance video was inadmissible hearsay, and that admitting that evidence was not harmless error. As we reject Holmes' assumption that a video camera can make statements as understood in the rule against hearsay, we affirm.

## I.

The surveillance system at the Saks Fifth Avenue men's clothing store in Friendship Heights includes several cameras that can follow individuals as they move throughout the store. A store detective, Abiden Adekunle, testified that he was monitoring the security cameras, noticed appellant when he entered the store with two other individuals, and trained the camera on appellant and one of his companions. Through the live video feed, Detective Adekunle saw Holmes' companion select two shirts from a display table and place them in Holmes' bag.[1] Holmes was facing his associate at the time. Holmes then zipped his bag and both

---

[1] Photos of the shirts found in Holmes' bag were introduced into evidence. The store priced the shirts at two hundred and seventy five dollars each.

men walked away, browsing briefly in the shoe department before exiting the store onto Wisconsin Avenue. Holmes was still holding the bag and had not paid for the shirts. Detective Adekunle then alerted a colleague on the sales floor by walkie-talkie, who detained Holmes on the street a few steps from the door. The video about which Detective Adekunle testified was also entered into evidence.

During trial, Holmes objected to Detective Adekunle's testimony about what he observed on the surveillance video, saying that "the problem is that he's not viewing it with his own eyes. It's sort of like I watched Scandal tonight and . . . come back and tell you . . . what happened on Scandal. It's not necessarily what happened on Scandal, it's my interpretation of what happened . . . on the TV." The trial court overruled this objection and allowed the detective to testify "based on what he observed, not his interpretation of the actions."

The trial court credited Detective Adekunle's testimony that he observed Holmes throughout his visit to the store through a surveillance camera, and observed specifically that a man with Holmes took two items from a table and placed them into Holmes' bag. The court also found it "apparent" from the video that "Mr. Holmes is directly facing the individual as the individual deposits the items in his bag."

## II.

We review evidentiary rulings for abuse of discretion, *Williams v. United States*, 77 A.3d 425, 431 (D.C. 2013), and we assume without deciding that we review *de novo* a conclusion that a particular statement falls under a hearsay exception.[2]

---

[2] Many of our cases distinguish review of an evidentiary ruling itself, which is for abuse of discretion, with review of a legal conclusion about the scope of a rule of evidence, which is *de novo*. *See, e.g.*, *Smith v. United States*, 26 A.3d 248, 257 (D.C. 2011) ("We review a trial court's decision to admit hearsay evidence for abuse of discretion; however, the determination of whether a statement falls under an exception to the hearsay rule is a legal conclusion, which we review *de novo*.") (quoting *Dutch v. United States*, 997 A.2d 685, 688 (D.C. 2010)); *Jenkins v. United States*, 80 A.3d 978, 989 (D.C. 2013) ("We review the court's rulings on admissibility for abuse of discretion; in so doing, we accept the factual findings on which the rulings rest so long as they are not clearly erroneous, while we accord *de novo* consideration to the legal issue of whether the hearsay exceptions were available."). In other cases, however, we have reviewed a conclusion that a statement falls under a hearsay exception for abuse of discretion. *See, e.g.*, *Bridges v. Clark*, 59 A.3d 978, 985 n.3 (D.C. 2013) (citing *Obelisk Corp. v. Riggs Nat'l Bank*, 668 A.2d 847, 855 n.7 (D.C. 1995) ("[T]he decision to exclude the memo [as inadmissible hearsay], therefore, was within the broad discretion normally afforded to the evidentiary rulings of trial courts.")). We need not decide the issue here because we can uphold the trial court's ruling even under the least deferential standard of review.

Detective Adekunle's testimony about Holmes' conduct in the store was based exclusively on what he saw on the store's surveillance cameras. Even though his observation of Holmes was indirect, and mediated by the surveillance system, his report of what he saw using that system was not hearsay. Hearsay is an out-of-court statement, not made by the declarant while testifying at the current trial or hearing, that is offered in support of the truth of the matter asserted. *Little v. United States*, 613 A.2d 880, 882 (D.C. 1992). A statement is either an oral or written assertion or nonverbal conduct intended as an assertion. *Id*. A person's out-of-court statement is not always reliable evidence, since it can be informed by bias or misperception, or it can be an outright lie. Accordingly the primary point of the rule against hearsay is to generally exclude a person's assertions from evidence unless that person testifies, which allows the other party to probe for any possible bias, misperception, or inconsistency in the witness's account of events through cross-examination.

A surveillance system, however, is not a person. Rather, it is a tool to aid perception, much like binoculars, a telescope, or glasses. When a witness uses a tool to make an observation, the opposing party may challenge the reliability of the tool or the witness's ability to use the tool, as Holmes' trial counsel did here. But a tool is not like another person who makes an "assertion" to the witness. When

Detective Adekunle testified about what he saw on the screen of the store's surveillance camera, he was not reporting any other person's out-of-court statement. Thus his testimony was not hearsay.[3] Because his testimony was not hearsay, the admissibility of the detective's statements about what he saw on the surveillance system does not depend on the admission of the video feed itself into evidence.

Courts considering this question invariably reach the same conclusion we have reached here. *See, e.g.*, *United States v. McKenzie*, 505 Fed App'x 843, 845 (11th Cir. 2013) (unpublished) (agent's testimony that he observed appellant selling cocaine on a live video feed was not hearsay because the agent testified about his perceptions of the video and not about what anyone said in the video); *United States v. Munoz-Mosquera*, 101 F.3d 683, at *2 (2d Cir. 1996) (unpublished) ("[V]isual images on the videotapes at issue were not oral or written assertions or nonverbal conduct of a person intended by the person as an assertion . . . .") (internal quotation marks and ellipses omitted); *Ostalaza v. People*, 58 V.I. 531, at *17 n.32 (2013) (rejecting argument that testimony about what the witness

---

[3] Holmes' suggestion that the video feed was a statement because the store detective was able to train the camera on him and follow him throughout the store is unavailing. If anyone could be said to have made a statement by moving the camera, it would have been Detective Adekunle, who testified and was available for cross-examination.

saw on a video was hearsay, and citing cases drawing the same conclusion from state appeals courts in California, Michigan, Illinois, Wisconsin, Florida, Indiana, Illinois, Pennsylvania, Kentucky, and Georgia, and the Second Circuit); *State v. Schmidt*, 817 N.W.2d 332, 338-39 (N.D. 2012) (witness's statement that he saw appellant on surveillance video using an in-store ATM was not hearsay); *People v. Tharpe-Williams*, 676 N.E.2d 717, 720 (Ill. App. Ct. 1997) ("[T]he underlying basis for excluding hearsay evidence does not apply to 'out-of-court statements' made by a video camera."); *Commonwealth v. Capeles*, 950 N.E.2d 84 at *1 (Mass. App. Ct. 2011) (unpublished) ("Witnesses may testify to things they have seen even when visual aids are employed."); *Pritchard v. State*, 810 N.E.2d 758, 760-61 (Ind. Ct. App. 2004) (testimony recounting what witnesses saw on a jail surveillance system is "no different than if they had been standing on cell block E-5 observing the incident").

Finally, we note that if a witness testifies about the content of an out-of-court statement, and that statement is offered in support of its truth, then the testimony is hearsay, whether or not the witness observed the other person live or on camera. *See, e.g.*, *United States v. Martinez*, 588 F.3d 301, 310-11 (6th Cir. 2009) (a video of a person describing and demonstrating the proper way to perform a medical procedure was inadmissible hearsay because the person made statements

which were offered in support of the truth of the matter asserted); *see also Pritchard*, 810 N.E.2d at 761 (testimony about what witnesses observed on video was not hearsay because the video images only showed the non-verbal conduct of the persons depicted and included nothing that those persons intended as an assertion). But that is not what occurred here. That the detective observed the matters he testified about through a video surveillance system rather than with his naked eyes is simply immaterial to the operation of the rule against hearsay.

For the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*