2022 IL App (1st) 200402-U
No. 1-20-0402
September 16, 2022

SIXTH DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court<br>) of Cook County, Illinois<br>)<br>) No. 18 CR 14270 |
| Plaintiff-Appellee, | |
| | ) |
| v. | ) The Honorable |
| ERIC JACOBS | ) William T. O'Brien, |
| Defendant-Appellant. | ) Judge Presiding.<br>) |

JUSTICE WALKER delivered the judgment of the court.
Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defense counsel provided ineffective assistance by failing to object to a police officer's testimony about what he saw when he manipulated a video on police department equipment, when the prosecution did not show to the trier of fact the video as the officer saw it on police department equipment.

¶ 2     After a bench trial, the trial court found Erik Jacobs guilty of burglary. Jacobs contends he received ineffective assistance of counsel. We find that defense counsel unreasonably failed to

object to the testimony of a police officer who swore he saw certain images on a video recording, when the prosecution never showed the court the images the police officer saw. Because we find the error prejudicial, we reverse and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4        When Abraham Mora came home on August 28, 2018, he found much of his home in disarray – dresser drawers pulled open, their contents and other items strewn haphazardly – and the television missing. Mora's home security camera showed Jacobs, wearing a white top and red shorts, coming to the door, and ringing the bell around 1 p.m. when none of Mora's family was home.

¶ 5        Police obtained a recording from a neighbor's security camera showing people in the alley around 2:15 p.m. on that day. Jasmine Diaz, who lived near Mora, pawned a wristwatch on August 31, 2018. A police officer who saw a video recording of the pawnshop transaction asked Mora if he lost a watch. Mora looked for his watch, found its box empty, and described the watch to police. The description matched the pawned watch.

¶ 6        Prosecutors charged Jacobs with burglary. At the bench trial, an officer testified that the pawnshop video showed Jacobs entering the shop with Diaz, looking around while she pawned the watch, and then leaving the store together. The trial court watched the store's video recording of the incident. Diaz carried a light-colored shoulder bag. The officer testified that on August 28, 2018, Jacobs posted on Facebook a picture showing Jacobs holding the watch Diaz later pawned. The court admitted into evidence the Facebook picture.

¶ 7      Officer Matthew Scott testified that he watched the neighbor's video recording showing the alley behind Mora's home. He stated that the video showed a black man carrying a large rectangular object, possibly Mora's television, in the alley, apparently coming from Mora's yard. A second person followed. The transcript shows the following testimony:

"Q. Okay. And were you able to see any homes or streets from that video?

A. You could see the alley, both sides of – both rear residences, and a large apartment building on the Irving Park side.

***

Q. When you watched it back at the Chicago Police Department, what if anything did you observe ***?

A. I could see persons moving in the alley behind what appeared to be the victim's home ***. I could see a male black adult going from the – what appeared to be the rear yard of [Mora's home] across the alley on foot while holding a large rectangular object, which matched the description of the victim's television. ***

***

Q. Were you able to use any tools back at the Chicago Police Department in order to assist you with the view of the surveillance video?

A. Only that -- to magnify it.

Q. And after you magnified it, were you able to see the clothing of that male subject walking across the alleyway with the television?

A. I could see that he was wearing a white sleeveless t-shirt and what appeared to be shorts, possibly close to knee length.

\*\*\*

Red shorts, I mean.

Q. Red shorts?

A. Yeah.

Q. Did you see any other subjects on the video after you observed that male subject walking across the alleyway?

A. There appeared to be a female subject walking across again from the -- from that rear yard, which is seen, like, the victim's rear yard across the alley to the rear of the building \*\*\* and entering the black gate as the male subject had with the rectangular object.

Q. Were you able to see what if anything that second subject -- female subject was carrying when she entered -- walked across the alleyway?

A. It looked like a light-colored shoulder bag."

¶ 8    The court, without objection, accepted into evidence the original video recording of the alley. The prosecution did not offer the magnified video Scott saw when he used police department tools to assist him in viewing the video. Scott testified the exhibit offered into evidence was "similar" to the video he watched at the police station. He added, "in our offices, I was able to see a clearer image and more color than what appeared" in the exhibit in evidence. Defense counsel did not object to Scott's testimony.

¶ 9        The court found Jacobs guilty of burglary and sentenced him to ten years in prison. Jacobs now appeals.

¶ 10                                                    ANALYSIS

¶ 11       On appeal, Jacobs argues his counsel provided ineffective assistance by failing to object to Scott's testimony about what he saw when he used police department tools to improve his view of the video recording. To show ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Dupree*, 2018 IL 122307, ¶ 44.

¶ 12       Scott testified about what he saw while watching the video recording from the neighbor's security camera showing the alley. The best evidence rule required authentication and admission into evidence of the recording about which the officer testified. *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 611, 676 N.E.2d 717, 720 (1997). Scott's "description of a video[recording] that was never introduced into evidence runs afoul of the best evidence rule." *Village Discount Outlet v. Department of Employment Security*, 384 Ill. App. 3d 522, 526, 893 N.E.2d 943 (2008).

¶ 13       In *People v. Sykes*, 2012 IL App (4th) 111110, a witness testified about what he saw when he used a VCR to manipulate a videotaped image. The *Sykes* court found the trial court erred by allowing the testimony into evidence because the witness "did more than simply state his opinion as to what the video published to the jury entailed; rather, he testified about what he saw and gave his opinion based on the *** purportedly clearer video not played for the jury."

*Id.* at ¶ 41. Similarly, in *People v. Baltimore*, 381 Ill. App. 3d 115**,** 885 N.E.2d 1096 (2008), a police officer used a multiplex system to view specific frames of a videotape. The officer's report "contained things not seen in [the] videotape [offered as evidence]. The *** [o]fficer *** saw things in the frames that led him to form conclusions, which he included in his report." *Id.* at 12**1**. The circuit court sustained the defendant's objection to the exhibit and the officer's report, holding that the State needed to show the jury the video as the officer saw it, on the multiplex system the officer used.

¶ 14    Scott testified about what he saw when he manipulated the video to view the images in a way not available to the trier of fact. If defense counsel had timely objected, the trial court should have disallowed Scott's testimony about what he saw on the manipulated video recording. We see no strategic purpose for failing to object to Scott's highly prejudicial testimony that, when he manipulated the images, he could see on the video recording a black man in red shorts carrying a television followed by a woman carrying a light-colored shoulder bag. The testimony provided a critical link between Jacobs and the burglary that occurred on August 28, 2018. Given the State presented only circumstantial evidence against Jacobs, we find a reasonable probability that Jacobs would have achieved a better result if his attorney had objected to Scott's testimony. Jacobs does not contest the sufficiency of the evidence, and we agree that the State presented sufficient evidence to support the conviction. Thus, a retrial will not violate principles of double jeopardy. *People v. King*, 2020 IL 123926, ¶¶ 52-53.

¶ 15    We reverse and remand for a new trial because counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *People v. Dupree*, 2018 IL 122307, ¶ 44. We hold that counsel provided ineffective assistance by failing to object to Scott's testimony about what he saw on the manipulated video recording.

¶ 16                                    CONCLUSION

¶ 17       Jacobs received ineffective assistance when his counsel failed to object to Officer Scott's testimony about what he saw when he manipulated a video recording to show images the prosecution did not show the trier of fact. Because we find a reasonable probability Jacobs would have achieved a better result but for the error, we reverse and remand for a new trial.

¶ 18       Reversed and remanded.