2021 IL App (2d) 190897-U
No. 2-19-0897
Order filed February 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-498 |
| ELSADIG MUSA, | ) ) ) | Honorable Phillip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Jury waiver by nonnative English-speaking defendant was valid despite the absence of an interpreter, where (1) defendant had a master's degree in English and prior experience teaching English overseas, (2) defendant showed an ability to speak and understand English during the proceedings; and (3) the trial court explained clearly the ramifications of a jury waiver and defendant explicitly acknowledged that he understood.

¶ 2   Defendant, Elsadig Musa, appeals his convictions of criminal sexual abuse (720 ILCS 5/11-1.50(a)(1) (West 2016)) and unlawful restraint (*id.* § 10-3(a)).  He contends that his jury waiver was not knowingly and understandingly made because he is a nonnative English speaker and the trial court failed to provide an interpreter.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was initially charged by information on July 18, 2017. That same day, he appeared in court and, when asked if he understood the charge or had read the complaint, he responded, "I do not speak English well." A friend who was in court with him said that defendant spoke Arabic and did not speak English well. The court called an interpreter on the phone. The court asked defendant, "Can you hear the interpreter, sir?" Defendant said, "Yes."

¶ 5     Defendant was indicted and, on September 8, 2017, he appeared for his arraignment with counsel but without an interpreter. The court admonished defendant of the charges and his rights, including his right to a jury trial, and asked defendant if he understood. The following colloquy then occurred between defendant, his counsel, and the court:

> "DEFENDANT: If only I may speak in Arabic.
>
> THE COURT: Okay. So—
>
> [DEFENSE ATTORNEY]: I have had no problems conversing with [defendant], [Y]our Honor.
>
> THE COURT: Okay.
>
> So did you understand what I just said to you?
>
> DEFENDANT: Yeah, yeah.
>
> THE COURT: Okay.
>
> DEFENDANT: I think my family is here with a translator.
>
> THE COURT: Okay. But you could understand and hear what I've just explained to you. Isn't that correct?
>
> Is that a yes?
>
> DEFENDANT: Yes.

THE COURT: Okay.

And [defense counsel] has indicated that he's had no problems communicating with the defendant in English."

¶ 6    On February 13, 2018, defendant appeared at a hearing on a motion regarding the cost of a sex offender evaluation.  The court stated that it knew there was "some interpreter issue" placed in the file, and defense counsel replied: "[defendant] speaks English, I think, well enough to understand what's going on.  I've had no problems communicating with [defendant]."  The court noted that there had been something written on the file with a question mark and that it just wanted to make sure that defendant was able to understand the proceedings.

¶ 7    On May 1, 2018, defendant appeared for a status hearing on the sex offender evaluation, and the court asked if an Arabic interpreter was available.  Counsel told the court that "[defendant] speaks *** fine English."

¶ 8    On October 2, 2018, defense counsel told the court that the parties were ready to set the matter for trial.  Counsel further stated:

"We're going to make a request.  In speaking to [defendant], [Y]our Honor, we have very little difficulty communicating.  Usually he brings someone in with him when he has questions, [Y]our Honor, that he's had difficulty articulating or understanding.

We're going to need an Arabic interpreter for the trial."

¶ 9    On February 1, 2019, defendant signed a written jury waiver.  At a hearing that same day, the following colloquy occurred:

"THE COURT: Sir, it's my understanding you wish to waive or give up your right to a jury trial. Is that correct?

DEFENDANT: Yeah.

THE COURT: Okay. A jury trial is where 12 people selected from the community would decide your guilt or innocence.

Do you understand what a jury trial is?

DEFENDANT: Yeah.

THE COURT: By waiving or giving up your right to a jury trial, you're asking to have a bench trial. A bench trial is where a judge sitting alone such as myself would decide your guilt or innocence.

Do you understand what a bench trial is?

DEFENDANT: Yeah.

THE COURT: Yes?

DEFENDANT: Yes.

THE COURT: Okay. Has anyone forced you or coerced you into doing this? Has anyone made you do this?

DEFENDANT: What do you mean?

THE COURT: Has anyone made you give up your right to a jury trial? Has anyone made you ask for a bench trial?

DEFENDANT: Bench trial.

THE COURT: I understand that you want a bench trial, but has anyone forced you or coerced you into doing this? Have they made you do this? Have they threatened you into doing this?

DEFENDANT: No.

THE COURT: Okay. Have they—on the other side, have they promised you anything? In other words, have they said if you waive to a bench trial, I promise you you'll be found not guilty? Has anyone said anything like that or anything else to you?

DEFENDANT: No.

THE COURT: No one has promised you anything, right?

DEFENDANT: Yes.

THE COURT: Okay. No one has promised you anything, correct?

DEFENDANT: Yes.

THE COURT: Okay. How long have you been here in the United States?

DEFENDANT: I came to the United States January 1st, 2016.

THE COURT: Okay, so you've been here for a couple years.

Your English is very good. Obviously you studied English for a while. Is that correct?

DEFENDANT: Yes.

THE COURT: Okay. Do you work?

DEFENDANT: Yeah, I'm working at a gas station.

THE COURT: You work at a gas station?

DEFENDANT: Yes.

THE COURT: Okay. And you don't have any difficulty understanding what I am saying to you, do you?

DEFENDANT: Sometime your accent, it isn't clear for me.

THE COURT: Okay. Sometimes my accent is not clear.

DEFENDANT: Yes.

THE COURT: If I speak more slowly, is it easier for you to understand?

DEFENDANT: Yes.

THE COURT: I'll make sure, then, that I speak more slowly. I can certainly understand you.

DEFENDANT: I appreciate that.

THE COURT: Once you waive or give up your right to a jury trial, that's forever. In other words, you can't come back later on and change your mind. You can't sit there a month from now and say you know, I shouldn't have done that and now I want my jury trial back.

You understand that once you give up this right, you can't change your mind.

DEFENDANT: Okay.

THE COURT: Do you understand that?

DEFENDANT: Yes.

THE COURT: Okay. I'll make a finding, then, that the waiver is being made knowingly, freely, and voluntarily."

¶ 10    Counsel noted that an interpreter had been arranged for the jury trial and asked the court to continue that arrangement for the bench trial:

"[Defendant], as the Court just saw, speaks very good English. I have no trouble understanding him. I think we converse very well. He does always bring friends with, [Y]our Honor, to help anything that he has questions with, so for purposes of trial, I would like to have that translator."

The court responded:

"[Defendant], you have indicated I speak with an accent. You speak to me with a little bit of an accent as well. But I can understand what you're saying, and all your answers have been responsive to the questions that I've asked, but I can understand that under the pressure of a trial, the necessity to have an interpreter here to assist you over any sort of legal comments that might be made, so I would agree with [defense counsel], and we'll ask for an Arabic interpreter."

¶ 11    At trial, the victim testified about an incident in which defendant hugged her, grabbed her breasts, and kissed her face. Defendant told the court that he was not going to testify. He answered the court's questions about that decision, stating that he understood his rights. The court found defendant guilty, and a discussion was had about defendant surrendering his passport. Defendant stated, "I have no problem with that," and he agreed to bring it to court or have his wife bring it. At sentencing, defendant made the following statement in allocution:

"I'd like to speak, [Y]our Honor. Your Honor, I am an adult, I am a smart man, and I know what's going on around me.

I grew up with a family that consists of females only. I left behind seven sisters. I'm the oldest. My father is deceased and I am taking care of all of them. Besides that, I am a married man and I got two daughters.

This thing that happened to me, it's a nightmare. In our tradition, in our custom, to shake a hand of a woman, it could put you under the ground, it could cost you a lot more trouble than you think.

I don't believe what happened to me. I am a married man, it's impossible, and I will never do what happened—what had been said I did, and I am a married happy man with two daughters.

I left my country looking for a better life. I'm making $9 an hour, I can't even pay my bills, support my family back home, and support my kids and wife.

And with the past two years and with this problem, it destroyed my personality, destroyed my life, and it destroyed my morals.

And in the beginning and the end, I did not do what I've been accused of, and God knows, and God is my witness. In our religion it's forbidden, it is forbidden.

Thank you."

¶ 12    The presentence investigation report (PSI) stated that defendant previously taught British English to students of all ages at a school in Sudan. The author of the PSI noted that, when defendant was interviewed for the report, he brought a friend to act as an interpreter. A psychosexual evaluation report showed that defendant received a master's degree in English in 2016 from a university in Sudan. The author of the report noted that defendant had brought an interpreter with him to the evaluation, and the author expressed concern that defendant might have misinterpreted testing items due to the language barrier. The court sentenced defendant to 24 months of probation. Defendant filed posttrial motions but did not raise any issues regarding his jury waiver. The motions were denied, and defendant appeals.

¶ 13                                        II. ANALYSIS

¶ 14    Defendant contends that his jury waiver was not knowing or understanding because he was not provided with an interpreter when he made the waiver. The State responds that the record shows that defendant was proficient in English and able to understand the court's admonitions.

¶ 15    Defendant concedes that he did not raise in the trial court a challenge to his jury waiver. He asks us to overlook the forfeiture and reach the issue under the plain-error doctrine. The plain-error doctrine allows a reviewing court to consider an unpreserved error when either: (1) an error

occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) an error occurred that is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). An error that deprives the defendant of his right to a jury trial is reviewable under the plain-error doctrine because of the fundamental nature of the right. *People v. Bracey*, 213 Ill. 2d 265, 270 (2004); *In re R.A.B.*, 197 Ill. 2d 358, 363 (2001). The State does not dispute that such an error would be subject to plain-error review; it simply denies that the trial court erred concerning the jury waiver. See *People v. Hood*, 2016 IL 118581, ¶ 18 (without error, there can be no plain error).

¶ 16    A defendant's fundamental right to a jury trial also includes the defendant's right to waive a jury trial. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). To be valid, a jury waiver must be knowingly and understandingly made. *Bracey*, 213 Ill. 2d at 269.

¶ 17    A defendant's jury waiver is knowing and understanding when he makes his decision with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts are not required to communicate "any set admonition or advice." *Bracey*, 213 Ill. 2d at 270. However, if the facts and circumstances indicate that the defendant may not fully understand the concept of a jury waiver, then the trial court must explain the ramifications of a waiver. *People v. Phuong*, 287 Ill. App. 3d 988, 995 (1997).

¶ 18    Whether a jury waiver is valid depends on the facts and circumstances of each case and does not rest on any "precise formula." *People v. Clay*, 363 Ill. App. 3d 780, 791 (2006). The key concept that the defendant must understand is that the judge, not a jury, will be deciding his case. *Bannister*, 232 Ill. 2d at 69. Typically, a defendant's waiver is valid if it is pronounced in open court by defense counsel without the defendant's objection. *Bracey*, 213 Ill. 2d at 270. "Although

a signed jury waiver alone does not prove a defendant's understanding, it is evidence that a waiver was knowingly made." *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7.

¶ 19    It is the defendant's burden to establish that his jury waiver was invalid. *Id.* Where, as here, the facts relating to the jury trial waiver are not in dispute, we review *de novo* whether defendant knowingly and understandingly waived his right to a jury trial. *Bracey*, 213 Ill. 2d at 270.

¶ 20    Here, the facts and circumstances show that defendant knowingly and understandingly waived his right to a jury trial. On February 1, 2019, defendant filed a signed jury waiver form, which was evidence that he knowingly waived his right to a jury. Also, defendant's counsel told the trial court on multiple occasions that defendant spoke "fine English" or spoke English well enough to understand what was going on. The court also engaged in a colloquy with defendant about his jury waiver. Defendant acknowledged that he understood that he was giving up his right to a jury trial and specifically indicated his desire for a bench trial. He said that he understood that he had a right to a trial by jury and that his waiver was not procured by force, threats, or promises. Thus, the trial court explicitly ensured not only that defendant knew that he had a right to a jury trial but also that defendant waived the right knowingly and understandingly.

¶ 21    Defendant claims, however, that he needed an interpreter for his jury waiver to be knowing and understanding. He points to his use of an interpreter in other parts of the proceedings and to his comments on the record that he did not speak English well and that the trial court's accent was not "clear." But the record as a whole shows that defendant had a good command of the English language and communicated effectively with the court. Indeed, the court itself found during the jury-waiver colloquy that defendant's English was very good. Defendant's competence in English

was shown in his possession of a master's degree in English, his experience teaching English, and his clear statement in allocution at sentencing.

¶ 22    The record also indicates that the defendant would have asked for clarification if he misunderstood the concept of a jury or waiver. When the court initially asked defendant if anyone forced or coerce him into pleading guilty, defendant asked "What do you mean?" Defendant also expressed his concern about the judge's accent. Moreover, defendant claimed—despite indications to the contrary—that he could not speak English well and that he had brought friends to interpret for him in other circumstances when needed. Thus, it is clear that defendant was comfortable expressing to the court any difficulties in understanding English. This suggests that the defendant would have requested clarification if he did not understand his right to a jury trial or his waiver of it.

¶ 23    Thus, given all the circumstances, namely (1) that the trial court properly explained to defendant the ramifications of a jury waiver, (2) that defendant clearly acknowledged that he understood those consequences, and (3) that defendant had a demonstrated competence in English, we hold that the jury waiver was valid.

¶ 24    Nevertheless, defendant cites *Phuong* to argue that his waiver was invalid when he did not have an interpreter. But *Phuong* is distinguishable.

¶ 25    In *Phuong,* the First District found a jury waiver invalid where the defendant waived a jury without an adequate explanation of her jury right. The defendant was a Chinese-speaking recent immigrant to the United States, who had only a few months of education in the United States and no prior experience with the American judicial system. *Phuong*, 287 Ill. App. 3d at 991. The defendant signed a jury waiver, and the trial court "without further elaboration" advised her "that she could be tried by either a judge or a jury." *Id.* The appellate court found that the defendant

did not knowingly waive her right to a jury trial. *Id.* at 995. The appellate court acknowledged that the defendant signed a jury waiver form that was translated for her. *Id.* at 996. However, given her lack of familiarity with the American judicial system and the trial court's failure to inform her that a jury trial meant that members of the community would be the fact finders, the appellate court found that the record was not clear that the defendant "actually understood what a jury trial is." *Id.* Thus, the appellate court was "not convinced that the mere translation of the language of the waiver form adequately conveyed its meaning to [the] defendant." *Id.*

¶ 26    Here, in contrast to *Phuong*, the trial court engaged in an extensive colloquy with defendant about his jury waiver and fully explained to defendant what a jury trial would entail. In further contrast to *Phuong*, defendant had a demonstrated familiarity with English, and he explicitly told the trial court that he understood the admonitions.

¶ 27    We hold that, under the facts and circumstances of this case, defendant's jury waiver was valid. Since there was no error, there was no plain error.

¶ 28                               III. CONCLUSION

¶ 29    The judgment of the circuit court of De Kalb County is affirmed.

¶ 30    Affirmed.