NOTICE

Decision filed 08/29/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200369-U

NO. 5-20-0369

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 19-CF-156 |
| | ) | |
| TOD A. KENNISON, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1 *Held*: The defendant's waiver of his right to a jury trial was knowing and voluntary where the trial judge ascertained that he understood that a judge, rather than a jury, would decide his guilt and that he had the right to choose to be tried by a jury.

¶ 2 The defendant, Tod A. Kennison, was convicted of one count each of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) and possession of less than five grams of methamphetamine (720 ILCS 646/60(b)(1) (West 2018)) after a stipulated bench trial. The defendant appeals his convictions, arguing that his waiver of his right to a jury trial was not knowing and voluntary. We affirm.

¶ 3 I. BACKGROUND

¶ 4 On October 23, 2019, the defendant was riding his motorcycle when he was stopped on suspicion of driving while license revoked. Perry County Sheriff's Deputy William Reagan, who

1

effectuated the stop, was familiar with the defendant. During the stop, the defendant made what Deputy Reagan described as "furtive movements." The encounter ultimately led to the defendant's arrest. During a search of the defendant's person, Deputy Reagan found a pistol, ammunition, and less than one gram of a substance later determined to be methamphetamine. The defendant waived his *Miranda* rights and admitted that both the gun and the substance were his and that the substance was methamphetamine.

¶ 5    Two days later, the State filed a seven-count indictment charging the defendant with two counts of aggravated unlawful use of a weapon by a felon (720 ILCS 5/24-1.6(d)(3) (West 2018)), two counts of unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of possession of a stolen firearm (*id.* § 24-3.8(a)), one count of defacing identification marks of firearms (*id.* § 24-5(b)), and one count of possession of less than five grams of methamphetamine (720 ILCS 646/60(b)(1) (West 2018)). Attorney Matt Foster was appointed to represent the defendant.

¶ 6    On January 6, 2020, the defendant filed with the court a written waiver of his right to a jury trial. At a status hearing held that same day, defense counsel informed the court that he intended to file a motion to suppress. He then stated that if that motion were denied, he anticipated "either a stipulated bench trial or even an open plea."

¶ 7    The court then addressed the defendant. After noting that the defendant had previous experience with the justice system, including prior felony convictions, the court stated, "You know what a jury is. You know what its function [is]. You know Mr. Foster would stay with you throughout the trial at no cost to you." The court then explained that if the defendant waived a jury trial on the seven charges, he would not be able to request a jury later. The court asked, "You know

that, right? Again, your date of birth [is] November the 11th of '72. Did you make it through high school?" The defendant replied, "Yeah."

¶ 8    The court continued to admonish the defendant as follows:

"Not presently under the influence of alcohol or drugs? Take any kind of psychotropic, mind or mood altering medication, anything to control your behavior? Other than what you and Mr. Foster have been talking about, anyone made any threats or promises to you to make you give up your right to a jury trial? Are you under any kind of coercion, duress, or pressure? Anybody twisting your arm, pushing you into giving up your right to a jury trial?

Tod, handed to you is a written waiver of jury. You have signed off on it. Is that because you wanted me to see in open court you have knowingly, intelligently, and voluntarily given up your right to a jury and you just want to move on to a bench trial in front of myself to determine later what kind of exactly bench trial that will be but we will make sure you understand the workings of it, no matter if it's stipulated or otherwise. Okay?

Show for the record then he has signed off on the written waiver of trial by jury. It has been witnessed by his trial counsel Mr. Foster."

At this point, the trial judge indicated that the matter would be set for a bench trial, and discussed possible dates with counsel. The transcript does not indicate whether the defendant nodded his head or made any other nonverbal responses to the court's questions.

¶ 9    After setting a trial date, the court again addressed the defendant, noting that before the trial, defense counsel would discuss with the defendant the type of bench trial he wanted to have. The court stated, "Stipulated to the facts or stipulated to the facts are sufficient to find you guilty, there is a difference, especially with regard to your appellate rights, and he will explain all of that

3

to you, okay? If not, I will. Any questions?" The defendant replied, "No." The court asked the defendant if he had any objections, and the defendant shook his head.

¶ 10    On February 18, 2020, the defendant filed a motion to quash his arrest and suppress all evidence obtained as a result of his arrest. The defendant appeared in court the same day. The court explained that although the defendant's bench trial was scheduled for that day, the motion to quash and suppress would require an evidentiary hearing, which would delay his trial. The defendant indicated that he understood. A motion hearing was set for March 25. The court asked the defendant, "Any questions at all, Tod?" The defendant replied, "No."

¶ 11    At the beginning of the March 25, 2020, motion hearing, the court explained to the defendant the charges he was facing along with the sentencing ranges on each. The court then asked, "Do you want me to explain anything more to you?" In response, the defendant said, "No."

¶ 12    After hearing testimony and arguments, the court denied the defendant's motion to quash and suppress. The court then asked defense counsel if he wanted the case set for a bench trial. Counsel indicated that there had been some discussions about a possible plea agreement. He then stated, "I discussed with Mr. Kennison based on the outcome of the motion whether we proceed to a stipulated bench trial, or I don't know if will be an open plea, but we will keep it for that date. I don't anticipate it resulting in a jury trial, but we will leave it on for that date to see what we end up doing."

¶ 13    The matter came for another status hearing on May 5, 2020. Defense counsel informed the court that pursuant to his discussions with the defendant, he anticipated holding a stipulated bench trial "to preserve any arguments related to the motion to suppress." Counsel further indicated, however, that he was still in talks with the prosecutor over the contents of the stipulation. He therefore requested a continuance.

4

¶ 14    At this point, the court addressed the defendant. He explained that there are two types of stipulated bench trials. In one type, the defendant agrees to the facts, but does not agree that the evidence is sufficient to convict him. The court explained that in this type of stipulated bench trial, the judge must decide whether the evidence is sufficient, and the defendant can appeal any aspect of the proceedings, including the motion to suppress. The court then explained the second type of stipulated bench trial, in which the defendant agrees both to the facts and that there is enough evidence to convict him. The court explained that with this type of trial, the defendant can only appeal his sentence.

¶ 15    The following discussion then took place:

"THE COURT: *** So you do understand the difference now that I explained it, correct?

DEFENDANT KENNISON: No.

THE COURT: That's not good.

DEFENDANT KENNISON: From day one you guys were looking for Anthony Melvin and you guys were fucking me and he was running free.

THE COURT: I don't know what Anthony Melvin has to do with the price of eggs or what I just talked about. Let's try to keep it in the proper perspective and try to do what you can to keep your mouth in check here. Okay? So let's go through it again the best I can do. If you sit here at any time in the near future and you tell me you agreed to the facts and that's all you say—

DEFENDANT KENNISON: I don't agree to shit."

The court asked defense counsel, "Why did you even bring it up? He is not agreeing to anything." In response, counsel stated that he did not know why the defendant was upset. He indicated that

5

he could announce ready for trial, but he would speak with the defendant to determine "how he wants to proceed." Addressing the defendant, the court explained that he would set the trial for June 1, 2020, but that, due to the COVID pandemic, there was no guarantee that there would be enough jurors to hear the case, which could lead to additional delay.

¶ 16   On May 7, 2020, the court entered an order setting the matter for a jury trial on June 1. The parties appeared for a status hearing on May 18. At that time, defense counsel indicated that the parties were negotiating a possible plea agreement. As such, he requested a continuance. The court granted the request and set the matter for another pretrial conference on July 6.

¶ 17   At the beginning of the July 6, 2020, hearing, the court explained to the defendant that a jury would be coming into the courtroom for purposes of trying cases the first week of August. The court noted, however, that the defendant's trial might be scheduled for the second week of August.

¶ 18   When asked the status of the case, defense counsel informed the court that he had been involved in "an ongoing conversation" with the defendant about the possibility of proceeding with a stipulated bench trial. Based on his discussions, he believed the defendant understood that a stipulated bench trial would preserve any arguments he might have regarding the court's ruling on his motion to suppress. Counsel indicated that he needed more time to discuss the situation with the defendant. He therefore requested that the pretrial conference be continued to July 20. The court set another hearing for that date, but left the case on the docket for an August jury trial.

¶ 19   On July 20, 2020, the State filed an amended information, adding a charge of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)). We note that the charge combined factual allegations contained in the two counts of the original information charging that offense. The original information alleged, in two separate counts, that the defendant possessed the

6

pistol and that he possessed four rounds of ammunition. The charge added to the amended information alleged that the defendant possessed both the pistol and the ammunition. Although the amended information also included the seven counts contained in the original information, the parties indicated that the State intended to proceed only on the new charge and the methamphetamine charge.

¶ 20    The matter came for a scheduled pretrial hearing on the same date. The prosecutor informed the court that his office had filed the amended information. The court explained the new charge to the defendant and asked whether he understood it. The defendant replied, "Yeah, I guess." The court stated, "That don't sound too convincing." Although the court eventually discussed the charges with the defendant again later in the hearing, at this point, the focus shifted to a discussion of the anticipated procedure.

¶ 21    Defense counsel informed the court that the parties anticipated stipulating to the facts, and both attorneys explained that the State intended to drop all the charges other than the methamphetamine charge and the new charge of unlawful use or possession of a weapon by a felon. The court asked whether the parties intended to stipulate to facts. The court then stated, "[T]his gentleman does show an understanding of the law, but not a thorough understanding of it, and I am going to be faced with making durn sure that Tod Kennison understands where he is going with this and can re-explain it to me when I'm done."

¶ 22    Addressing the defendant, the court explained, "For starters, it's akin to a trial, but there is no dispute as to what the facts are." The court further explained that a stipulated statement would be read, and that the defendant would be agreeing that "yep, that's what happened but I don't think it's enough to convict me." The court noted that he would almost certainly find the defendant guilty.

¶ 23    The court did not immediately ask the defendant if he understood this explanation. Instead, he asked the prosecutor whether he would be arguing for consecutive sentences. Both attorneys agreed that there was no basis for mandatory consecutive sentences, although the State could argue for discretionary consecutive sentences.

¶ 24    The court again addressed the defendant, asking, "What, if anything, about this would you not begin to understand given the little educational session I just had with you? I mean, do you have any misgivings about this at all?" The court went on to explain the effect of "this procedure" on the defendant's appeal rights. Specifically, the court explained that if the defendant wanted to appeal his sentence, he first would have to challenge his sentence with the court, but that if he wanted to appeal any other aspect of the proceedings, he would be free to do so. The court further explained, "It's not tantamount to a guilty plea, which means again you can appeal any aspect of this without first coming in and trying to withdraw anything. Now to a lawyer, that is splitting hairs. We think we understand it, but do you?"

¶ 25    At this point, the court asked defense counsel if there had been a motion to suppress filed in the case. Counsel replied, "We did, and that was one of the reasons why it's not necessarily an open plea."

¶ 26    The court once again addressed the defendant. He explained, "This procedure would allow you to appeal that ruling *** along with anything else you can think of you could appeal under these proceedings as they now stand." The court explained that this would not be possible if the defendant pled guilty. The court further explained that by proceeding in this manner, the defendant was agreeing to what the State says happened.

¶ 27    The court asked if the defendant had the opportunity to review the stipulation. Defense counsel responded, noting that he went over the stipulation with the defendant that morning. He

stated that as a result of his discussions with the defendant, he had requested some revisions to the stipulation, which the State made.

¶ 28   The court discussed the potential sentencing range with the defendant, who indicated that he understood. The court next ascertained that the defendant was not under the influence of drugs or alcohol or any type of psychotropic medication and that he was not promised anything or coerced into agreeing to the facts.

¶ 29   The court offered the defendant the following explanation of a stipulated bench trial:

"Tod, you know what a trial is. You know what a jury is. I have already told you three times we have a jury coming in August the third if you wanted to make use of that. If you sit here today and reach an agreement, there is not going to be any kind of a trial. *** You know Mr. Foster would stay with you throughout the entire duration of any trial if you so insisted at no cost to you."

¶ 30   Next, the court gave the defendant a detailed explanation of the allegations in the two remaining charges and the sentencing ranges on both. The court told the defendant that his sentences on the two charges would run concurrently, meaning that he was "looking at two to ten should he be convicted of both of these."

¶ 31   The court then announced: "He has opted for what's called a stipulated facts bench trial, and I will have to determine whether or not the facts are enough to convict him beyond a reasonable doubt of Counts Six and Eight, possession of methamphetamine and unlawful use or possession of weapons by a felon." Addressing the defendant, the court asked, "Anything at all about what I have said that confuses you?" The defendant replied, "No."

¶ 32   Next, the court allowed the prosecutor to read the stipulated statement of facts into the record. When he finished, the following discussion took place:

9

"THE COURT: Mr. Kennison, you had an opportunity to review that prior to its recitation. That is what I understand to be the facts that you have stipulated to. Has anything been changed or altered from the time that you had a chance to look at it?

DEFENDANT KENNISON: No.

THE COURT: So again, are you stipulating to those facts? Is that exactly what happened?

DEFENDANT KENNISON: Yes.

THE COURT: Is that a yes?

DEFENDANT KENNISON: Yes."

Defense counsel reiterated that the defendant was stipulating only to the facts, not their sufficiency to prove the defendant guilty. The court acknowledged this. The court then found the defendant guilty of both charges.

¶ 33    The case came for a sentencing hearing on September 28, 2020. The court sentenced the defendant to concurrent sentences of seven years on both charges. The defendant filed a motion to reduce his sentence, which the court denied. This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35    The defendant argues that the record does not demonstrate that he knowingly and voluntarily waived his constitutional right to a trial by jury. He acknowledges that he has forfeited this claim by failing to object before the trial court. See *People v. Owens*, 336 Ill. App. 3d 807, 810 (2002). He correctly points out, however, that Illinois courts have held that a claim of an invalid waiver of the right to a jury trial is subject to review under the plain error doctrine because it affects the fundamental fairness of a defendant's trial and undermines the integrity of the judicial process. *Id.* at 811 (quoting *In re R.A.B.*, 197 Ill. 2d 358, 363 (2001)). The first step in plain error

10

review is to determine whether any error occurred at all. See *People v. Church*, 2017 IL App (5th) 140575, ¶ 33. For the reasons that follow, we find no error.

¶ 36    The right to be tried by a jury is a fundamental right protected by both the federal and the Illinois State constitutions. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008) (citing U.S. Const., amends. VI, XIV, and Ill. Const. 1970, art. I, §§ 8, 13). A criminal defendant may waive the right to a jury trial. In fact, under the Illinois Constitution, he has a right to do so. *Id.* To be valid, a jury trial waiver must be made knowingly and voluntarily. *Id.* Pursuant to a statutory requirement, the waiver must also take place in open court. *Id.* at 66 (citing 725 ILCS 5/103-6 (West 2006)). Before accepting a defendant's waiver, the trial court has the obligation to ensure that the defendant's waiver is understanding and voluntary. However, there are no specific admonishments required to fulfill this obligation. *Id.*

¶ 37    The "pivotal knowledge that the defendant must understand" is that his case will be decided by the judge rather than by a jury. *Id*. at 69; *Church*, 2017 IL App (5th) 140575, ¶ 34. The defendant must also understand that he has a choice between being tried by a judge or a jury. See *People v. Bracey*, 213 Ill. 2d 265, 272-73 (2004) (finding that a defendant did not knowingly waive his right to a jury on retrial after a bench trial where there was no indication that he understood he was not obligated to have another bench trial); *People v. Johnson*, 2019 IL App (1st) 162517, ¶ 15 (noting that the defendant was not informed that he had the right to choose between a bench trial and a jury trial). In addition, the defendant should have at least a basic understanding of the jury's role. See *People v. Phuong*, 287 Ill. App. 3d 988, 996 (1997) (finding a jury waiver ineffective where there was no indication that the non-English-speaking defendant who had no prior experience with the criminal justice system understood what a jury or its function was).

11

¶ 38     Our determination of whether a defendant had the requisite knowledge to make a valid jury waiver "cannot rest on any precise formula." *Bannister*, 232 Ill. 2d at 66. Relevant considerations include the fact that a defendant executed a written jury waiver, a defendant's silence when his attorney requests a bench trial, and the defendant's prior experience with the criminal justice system. *People v. Parker*, 2016 IL App (1st) 141597, ¶¶ 47, 51. However, the validity of the waiver "depends on the facts and circumstances" of the case. *Bannister*, 232 Ill. 2d at 66.

¶ 39     On appeal, it is the burden of a defendant challenging the validity of a jury waiver to establish that the waiver was not understanding or voluntary. *Parker*, 2016 IL App (1st) 141597, ¶ 47. Where the pertinent facts are not in dispute, this is a question of law subject to *de novo* review. *Church*, 2017 IL App (5th) 140575, ¶ 34.

¶ 40     In support of his contention that his waiver was not knowing and understanding, the defendant first calls our attention to the January 6, 2020, hearing. He highlights one of the exchanges that occurred between the defendant and the trial judge, and he argues that the exchange "does not show an understanding and voluntary waiver of Kennison's right to a jury trial." The defendant further contends that at that hearing, the court never got verbal responses from the defendant.

¶ 41     We note that, had the January 6, 2020, hearing been the only time at which the question of the defendant's waiver was discussed, we might be inclined to agree with the defendant. Although the court did ask the defendant at that hearing whether he had any questions, the court did not give the defendant an opportunity to say whether he understood either that the court would decide his guilt if he opted for a bench trial or that he had the option to choose a jury trial instead.

¶ 42     Significantly, however, the January 2020 hearing was not the only hearing at which the question was discussed. Moreover, the court later allowed the defendant, in essence, to revoke the

waiver he made at that hearing. At a May 5, 2020, hearing, the court explained the differences between two different types of stipulated bench trials. When asked if he understood, the defendant said, "No." He then went on to complain that someone named Anthony Melvin was "running free" while he sat in jail and to indicate that he did not agree to anything. At this point, the court docketed the matter for a jury trial and the parties began plea negotiations. The matter remained on the jury trial docket until the defendant again waived his right to a jury trial at a July 20, 2020, hearing. We believe it is the validity of the July 20 waiver that is at issue.

¶ 43    At the July 20, 2020, hearing, the court explained to the defendant that he would be stipulating that the facts in the parties' agreed stipulation were "what happened." The court further explained that the trial judge would have to decide whether these facts were sufficient to support a conviction. The court asked if there was anything about this that the defendant did not understand. Initially, however, the court did not give the defendant a chance to respond to the question before going on to explain his appeal rights. The court later reminded the defendant that a jury would be seated in August "if [he] wanted to make use of that." The court then reiterated that in a stipulated facts bench trial, the judge would have to determine whether the facts in the agreed stipulation were sufficient for the judge to find the defendant guilty.

¶ 44    After providing these explanations, the court asked the defendant, "Anything at all about what I have said that confuses you?" The defendant responded, "No." Although it may have been preferable for the court to have asked about the defendant's understanding of each point as he went along, we find that this was adequate to ensure that the defendant had the "pivotal knowledge" that his guilt would be decided by the trial judge and that he understood that he had a choice between a jury trial and a bench trial.

¶ 45    The defendant argues, however, that the court never explained the constitutional nature of the right to a jury trial, who jury members would be, how the jury would be selected, the requirement that the jury unanimously vote to find him guilty, or the different roles played by the judge and the jury in a jury trial. We reject his argument because the court is not required to explain any of these things. See *People v. Steiger*, 208 Ill. App. 3d 979, 981 (1991) (explaining that "a trial court does not necessarily have to give a defendant an explanation concerning the ramifications of a jury waiver unless there is an indication that the defendant did not understand his right to a jury trial").

¶ 46    The defendant points out that the court told the defendant, "Tod, you know what a trial is. You know what a jury is." He argues that "these perfunctory admonishments did not even attempt to inform Kennison about the rights he was relinquishing." We are not persuaded. As the defendant acknowledges, his prior experience with the criminal justice system is a circumstance we may consider. See *Parker*, 2016 IL App (1st) 141597, ¶ 47. The defendant was previously convicted after jury trials of four felonies, one misdemeanor, and two counts of driving under the influence in Vermont. In light of this experience, the defendant has the familiarity with the basic idea of a jury trial that the appellate court found the defendant in *Phuong* lacked. See *Phuong*, 287 Ill. App. 3d at 996.

¶ 47    The defendant further contends that the court never explained the difference between the two types of stipulated bench trials again after the defendant indicated at the May 5 hearing that he did not understand this difference. We do not believe that such an explanation was required.

¶ 48    In reaching this conclusion, we find this court's prior decision in *Church* instructive though not controlling. That case, like the case before us, involved a stipulated bench trial. *Church*, 2017 IL App (5th) 140575, ¶ 4. On appeal, the defendant argued that his waiver of the right to a jury

14

trial was not knowing and voluntary. *Id.* ¶ 32. Unlike this case, the defendant's arguments focused not on the adequacy of the trial court's admonishments, but on statements in the record indicating that part of his motivation for waiving his right to a jury was the State's agreement to drop a drug conspiracy charge. *Id.* ¶¶ 32, 37. He asserted that this benefit was illusory because he was also charged with delivery of a controlled substance, and he could not have been convicted on both charges had the conspiracy charge not been dropped. *Id.* ¶ 36.

¶ 49    Significantly for purposes of this appeal, once this court rejected those arguments, we went on to consider whether, in a general sense, the defendant's waiver was knowing and voluntary. In concluding that it was, we emphasized that "the record before us clearly show[ed] that [the] defendant was well aware that his case would be decided by a judge rather than a jury." *Id.* ¶ 39. This awareness was sufficient for us to conclude that the defendant's waiver was knowing and voluntary. We did not also address whether the record demonstrated that the defendant understood anything specific to a stipulated bench trial. *Id.* ¶¶ 34, 39, 40.

¶ 50    We acknowledge that the *Church* court was not specifically asked to consider whether a defendant agreeing to a stipulated bench trial must understand anything other than the fact that a judge, rather than a jury, will decide his guilt. Even assuming such a requirement, however, we find that the record establishes that the defendant understood the relevant information.

¶ 51    As we have already discussed, the trial court in this case explained to the defendant multiple times that in the stipulated bench trial his attorney was requesting, he would be agreeing that the facts included in the stipulation had occurred and that the only thing for the court to determine was whether the agreed facts were sufficient for a conviction. When asked if he was confused, the defendant said, "No." In addition, the record indicates that the defendant discussed the procedure with his attorney and that he successfully requested that prosecutors make a change to the agreed

15

stipulation. Thus, the record clearly shows that the defendant understood that he was agreeing to the facts in the stipulation. As we have already concluded, the defendant also understood that his guilt would be decided by the trial judge, rather than a jury. A detailed understanding of the technical differences between different types of stipulated bench trials was not necessary for him to make an informed decision.

¶ 52    The defendant further contends that the "extended period" between the court's acceptance of the defendant's written jury waiver and his ultimate bench trial required a second set of proper admonitions. He argues that this was particularly necessary in light of the court's "confusing" statements about bringing in a jury during the intervening months. We first note that this argument mischaracterizes the court's statements. As we discussed earlier, the court made statements related to scheduling a jury trial while the case was on the jury docket for two months before the defendant again waived his right to a jury trial. Before accepting the defendant's second jury waiver, the court also reminded the defendant that a jury would be available should he choose to make use of it. In any case, we reject his contention.

¶ 53    Although the defendant cites no authority in support of his position, it is worth noting that the Illinois Supreme Court *has* found a second set of admonishments necessary under certain circumstances. In *Bracey*, the defendant waived his right to a jury, and the matter proceeded to a bench trial. *Bracey*, 213 Ill. 2d at 267. The trial court found the defendant guilty and set the matter for a sentencing hearing. When the court asked the defendant if he wished to say anything, the defendant indicated that he had wanted to testify in his own defense. *Id.* Finding that the defendant had not voluntarily waived his right to testify on his own behalf, the trial court vacated its finding of guilt and set the matter for a new bench trial before another judge. *Id.* at 268.

¶ 54    The defendant appealed his conviction after his second bench trial, arguing that the trial court erred in failing to ascertain whether he wanted to waive his right to a jury trial for his second trial. *Id.* The appellate court rejected this contention (*id.* at 268-69), but the supreme court reversed that ruling (*id.* at 272-73). The supreme court explained that the defendant's initial waiver of his right to a jury trial had "little evidentiary value and no legal effect with regard to the issue of whether [the] defendant knowledgeably consented to give up his right to trial by jury at his new trial." *Id.* at 271-72. The court emphasized that the defendant was never advised that he could choose between a jury trial and a bench trial for his second trial. *Id.* at 272. The court concluded that the defendant's "silent acquiescence to a second bench trial" was inadequate to demonstrate a knowing and voluntary waiver under these circumstances in light of "the fact that [his] written waiver was no longer effective." *Id.* at 272-73.

¶ 55    Here, as in *Bracey*, the defendant's initial waiver was no longer effective, although for different reasons. Unlike what occurred in *Bracey*, however, the defendant in this case did more than silently acquiesce as the court automatically scheduled him for a bench trial. Instead, the matter proceeded as a bench trial when defense counsel informed the court that this was what the defendant had decided upon after consultation with counsel. Moreover, as we have already discussed at length, the court's admonishments to the defendant on July 20, 2020, were adequate to ensure that the defendant's waiver was understanding and voluntary.

¶ 56    The defendant's final contention is that this case involves circumstances similar to those involved in *Johnson*, a case where the First District found that the record did not establish a knowing and voluntary waiver of the defendant's right to a jury trial. See *Johnson*, 2019 IL App (1st) 162517, ¶ 19. We disagree. In *Johnson*, defense counsel mentioned several times in the context of scheduling that the matter was set for a bench trial, and the defendant filed a written

17

jury trial waiver with the court. *Id.* ¶¶ 4, 5, 15. However, counsel never expressly told the court that the defendant was choosing a bench trial or waiving his right to a jury, and the record also did not show that the defendant was ever informed that he could choose between a bench trial and a jury trial. *Id.* ¶ 15. Here, by contrast, counsel did explicitly state that the defendant was opting for a stipulated bench trial after consultation with counsel, and the defendant was reminded that a jury would be available if he wanted a jury trial. The instant case is thus wholly distinguishable from *Johnson*.

¶ 57 Finally, it is worth reiterating that the court explained to the defendant at multiple hearings that the court would be deciding his guilt, and the court gave him multiple opportunities to ask any questions he might have about the proceedings. Although the court's questioning of the defendant at the January 6, 2020, hearing may not have been sufficient to ensure the defendant's understanding, the fact that the court provided these explanations at that hearing and multiple times thereafter is a relevant circumstance that weighs in favor of our conclusion that when the defendant waived his jury trial right at the July 20, 2020, hearing, he did so knowingly, understandingly, and voluntarily.

¶ 58                                          III. CONCLUSION

¶ 59 For the foregoing reasons, we affirm the defendant's conviction.


¶ 60 Affirmed.

18