*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CF-0853

DARRELL V. JONES, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CF3-002035)

(Hon. Rainey R. Brandt, Trial Judge)

(Submitted January 15, 2025                    Decided June 12, 2025)

*Sean R. Day* was on the briefs for appellant.

*Matthew M. Graves,* United States Attorney at the time the brief was filed, and *David B. Goodhand*, *Chrisellen R. Kolb*, *Elizabeth H. Danello*, and *Ella Gladman*, Assistant United States Attorneys, were on the brief for appellee.

Before DEAHL and SHANKER, *Associate Judges*, and STEADMAN, *Senior Judge.*

DEAHL, *Associate Judge*:  Darrell Jones repeatedly stabbed his friend, Wayne Pitt, and was charged with assault with intent to kill (AWIK) while armed and related counts.  Jones claimed that he acted in self-defense, and that in any event, his extreme intoxication precluded him from harboring the specific intent to kill

necessary to support the lead AWIK charge. As support for his intoxication defense, Jones sought to introduce evidence that he and Pitt had been drinking alcohol and smoking marijuana and PCP in the hours leading up to the stabbing. On the government's motion, the trial court precluded Jones from introducing evidence about his and Pitt's PCP use absent expert testimony elucidating the drug's effects. Jones was convicted on all counts. He argues on appeal that the trial court erred in precluding evidence of his PCP use, as was relevant to the intent to kill element of the AWIK charge.

We agree with Jones that the trial court erred when it precluded him from introducing evidence of his PCP use in the lead up to the stabbing. That evidence was highly relevant to Jones's intoxication defense, and there was no overriding unfair prejudice to the government in its presentation. The trial court's contrary view was based largely on a misreading of this court's opinion in *Jackson v. United States*, which it took to mean that evidence of PCP use is generally prohibited absent expert evidence explaining its effects. 210 A.3d 800 (D.C. 2019). *Jackson* pronounced no such rule. Unlike in *Jackson*, Jones was prepared to offer direct evidence by way of his own testimony about the effects PCP had on him. Also unlike in *Jackson*, here it was the proponent of the PCP evidence (Jones) who bore the brunt of any prejudice from its admission. Those critical differences between this case and *Jackson* prompt us to vacate Jones's AWIK while armed conviction,

though we affirm the remainder of his convictions because voluntary intoxication did not operate as a defense as to them.

## I. Facts

There is no dispute that Darrell Jones repeatedly stabbed his friend, Wayne Pitt, after the pair spent a day getting drunk and high together. Jones claimed that he acted in self-defense after Pitt threatened to kill him, but a jury rejected that defense and its contours are not especially relevant to this appeal. More pertinent to this appeal was Jones's claim that his extreme intoxication rendered him incapable of forming the specific intent to kill Pitt because he had effectively dissociated from the reality around him. If the jury believed him about that, it would obviate the specific intent to kill element necessary to sustain the lead AWIK charge against him, though it would not undercut his other two convictions for aggravated assault or carrying a dangerous weapon. Because it is the focus of this appeal, we recount the facts with a focus on Jones's intoxication defense.

*The Bender and the Stabbing*

Jones and Pitt both testified consistently about their bender in the hours leading up to the stabbing. The two had been friends for years when, on the day in question, they met up around noon to "chill[]," and "hav[e] fun smoking and

drinking." And fun they had, at least by some measures, for a while. Jones estimated that he drank about a fifth-and-a-half of Jack Daniels whiskey that day, which is roughly thirty-eight ounces or twenty-five standard shots of liquor. The men were also "smoking cigarettes and marijuana," though as we will delve into momentarily, the jury did not learn that this included PCP-laced cigarettes. Eventually, at around 7 p.m., the men took the train to the Anacostia Metro station, exited it, and hung around just outside the station for about an hour-and-thirty minutes. That is when Pitt's memory cuts out entirely, and Jones's becomes spotty, but surveillance footage captured much of what happened next.

As the two men began lingering outside the Metro station shortly after 7 p.m., surveillance footage shows them sharing what looks like a cigarette, smoking it as they passed it back and forth. Shortly after taking some drags on the cigarette Pitt collapsed for about ten minutes as Jones struggled to revive him and help him up. The two men then milled about outside for another hour or so, occasionally acting erratically. Jones looks like he is conducting an orchestra or directing air traffic at times, while Pitt passed the time by playing around with two electric scooters in the area. As the men wrap up their time outside—now around 8:20 p.m.—the footage shows both Pitt and Jones sharing another cigarette for a couple of minutes, after which the two men made their way back toward the Metro platform.

The men then spent about fifteen minutes on the platform when, at around 8:40 p.m., surveillance footage shows Jones attacking Pitt. There was some dispute about what preceded the attack: Jones contended that Pitt repeatedly threatened to kill him, but it is of no moment in this appeal so we put that evidence aside. The surveillance footage shows Jones acting aggressively toward Pitt at the start of what is at first a verbal altercation, then the two men eventually end up in a wrestling match where Jones pins Pitt to the ground and then stabs Pitt repeatedly in the chest. The knife attack lasted about forty seconds before Officer Cecil Hill intervened and demanded that Jones drop his knife. Jones, however, stabbed Pitt two or three more times before attempting to flee. Jones did not get far before he turned back toward Officer Hill and seemed to swing his arm at him, at which point Officer Hill shot Jones in the chest and Jones briefly collapsed. But Jones quickly jumped back to his feet and again tried to run away. Officer Hill tackled Jones and placed him under arrest.

*The Trial Court Precludes Evidence of PCP Use*

The jury did not hear the undisputed evidence that Jones and Pitt were smoking PCP outside the Anacostia Metro station just before the attack. Jones wanted to explain that as part of his intoxication defense, but the court precluded him from doing so. Had he not been precluded from doing so, Jones would have

presented the following evidence in support of his defense: (1) toxicology reports showing that both men had PCP in their system; (2) evidence that police recovered three vials of liquid PCP from Pitt's pocket after the stabbing; (3) evidence that Pitt had admitted to smoking PCP with Jones that day; and (4) Jones's own testimony that the men were smoking PCP just outside the Metro station, with Jones opining that in his experience as a PCP user, "[i]t deteriorates your train of thought" and "memory," while "also mak[ing] you stronger than you are."

The jury did not hear that evidence after the government successfully moved to preclude Jones from introducing it. More specifically, the government moved to preclude Jones from introducing the results of his and Pitt's toxicology reports, or any other "evidence on th[e] issue" of their PCP use. The government argued that the evidence of PCP use was "irrelevant without the presentation of expert testimony to explain" the effects that PCP would have had on Jones and Pitt.

The trial court agreed with the government and precluded Jones from introducing any evidence about his or Pitt's PCP use unless it was accompanied by expert testimony elucidating PCP's effects. The court reasoned that *Jackson v. United States*, 210 A.3d 800 (D.C. 2019), was "exactly on point." The trial court interpreted that case to establish a bright line rule that evidence about the effects of PCP use could not be introduced without an accompanying expert. The court

reasoned that while jurors could be expected to have some common understanding about the intoxicating effects of alcohol and marijuana—it permitted extensive evidence that the men got drunk and high on those substances—*Jackson* "draws a line at PCP," the effects of which are "highly technical." That is, the court reasoned that the intoxicating effects of PCP were beyond jurors' common understanding so that an expert was required "to help the members of the jury process that information" or it would be precluded entirely.

Jones countered, in seeking to admit the above evidence, that *Jackson* was inapposite. He pointed out that *Jackson* involved PCP use the previous day many hours before the attack, with no direct evidence that the defendant was under the influence of PCP at the time of the attack. *Jackson*, 210 A.3d at 809 (describing the "eighteen-hour period between when [appellant] smoked the PCP and the fight the following afternoon"). Whereas here, Jones and Pitt "had recently used PCP" "right outside the Anacostia Metro station" just before the attack, so unlike in *Jackson*, jurors could fairly infer that the men remained high on PCP at the relevant time. Jones also argued that he did not see how the evidence was prejudicial to the government; unlike in *Jackson*, it was not the government seeking to introduce evidence of the defendant's PCP use, but Jones himself who wanted to introduce it. Unmoved, the trial court precluded any evidence of PCP use and directed the parties not to even "mention" PCP absent expert evidence. While defense counsel then

attempted to procure an expert to testify, a host of difficulties—including the fact that the hospital had already "discarded [Jones's] blood samples" so the defense could not test the PCP levels in his blood—thwarted those efforts. Jones ultimately did not have an expert to support his defense so the court precluded any evidence of the men's PCP use.

Defense counsel sought reconsideration of the trial court's ruling after the government rested its case and before the defense presented its own. Counsel argued that if he were precluded from informing the jury about Jones's PCP use, the jury would be left with the false impression that he was only smoking weed and drinking whiskey the day of the attack. Defense counsel stressed that Jones "is a PCP user" and "he can testify as to how PCP affects him"—there was no need for an expert about that—and to preclude him from doing that would give jurors the mistaken "impression that people were smoking [only] Weed because that is what they're thinking at this point." He further explained that "most people on Weed are able to function, but that's the furthest from the truth" as to PCP. The trial court denied reconsideration, explaining that its "hands [were] tied" by this court's opinion in *Jackson*, which it again interpreted to hold that PCP, unlike marijuana or alcohol, "is a highly technical drug that requires an expert to explain" its effects. Jones then testified in his own defense, absent any mention of PCP.

The jury convicted Jones on all three counts. The court sentenced him to a total of ten years' imprisonment, consisting of concurrent terms of (1) ten years for AWIK while armed, (2) ten years for aggravated assault while armed, and (3) two years for carrying a dangerous weapon. Jones now appeals, targeting only his AWIK while armed conviction.

## II. Analysis

Jones contends that the trial court erred in precluding him from testifying that he was high on PCP during the assault. He argues that evidence was highly probative of a key issue in the case, to wit, whether Jones had the capacity to form the specific intent to kill Pitt. He further argues that there was no overriding prejudice to the government that would warrant precluding that evidence, particularly where Jones himself would suffer the brunt of the prejudice from evidence about his own PCP use. Jones posits that, in ruling otherwise, the trial court "misunderstood the rationale and scope" of *Jackson*. The government counters that the court correctly interpreted *Jackson* as requiring expert testimony whenever "the key question is whether and how PCP continue[d] to affect a particular individual hours after ingestion," 210 A.3d at 806, and it further argues that any error was harmless.

We agree with Jones that the trial court improperly precluded him from testifying about his own PCP use and the effects the drug has on him, and that the

trial court misread *Jackson* in ruling otherwise. The error went to the heart of the case and it was not harmless as to the lead AWIK while armed conviction. We now address those points in turn.

**A. The trial court erred in precluding all evidence of PCP use**

*1. Standard of review*

The parties disagree at the outset about the applicable standard of review in this case. The government posits that the trial court made a discretionary ruling that evidence of PCP use should be precluded because it was substantially more prejudicial than probative, a ruling that we would generally review for an abuse of discretion. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."); *(William) Johnson v. United States*, 683 A.2d 1087, 1094, 1099 (D.C. 1996) (en banc) (adopting Rule 403 and applying abuse of discretion standard to such rulings).

Jones counters that a de novo standard of review applies because the trial court did not exercise any discretion—it did not purport to weigh the probative versus the prejudicial value of the PCP evidence in the context of this case, nor did it mention Rule 403 and its applicable standards to the question before it. It instead relied upon a hard-and-fast, but erroneous, legal rule that evidence of PCP use and its effects can

never be admitted if unaccompanied by expert testimony, so Jones contends that we should review that legal ruling de novo. *See Jones v. United States*, 17 A.3d 628, 631 (D.C. 2011) (Even a discretionary ruling "must be founded upon correct legal principles," and it is a per se "abuse of discretion if the trial judge rests his or her conclusions on incorrect legal standards." (quoting *Blackson v. United States*, 979 A.2d 1, 6 (D.C. 2009)); *see also Holmes v. United States*, 92 A.3d 328, 330 n.2 (D.C. 2014) ("Many of our cases distinguish review of an evidentiary ruling itself, which is for abuse of discretion, with review of a legal conclusion about the scope of a rule of evidence, which is de novo.").

We do not resolve this dispute because it suffices to say that (1) in the event the trial court applied a categorical reading of *Jackson* to the issue before it, our review is de novo, (2) in the event the trial court conducted a standard Rule 403 balancing, we review for abuse of discretion, and (3) we need not resolve the parties' dispute about how best to frame the trial court's ruling because, in either case, the trial court reversibly erred.

*2. The trial court abused its discretion in precluding evidence of PCP use*

To the extent that the trial court treated *Jackson* as a hard-and-fast rule that evidence of PCP use must be accompanied by expert evidence elucidating the drug's effects, that was erroneous. *(James) Johnson v. United States*, 398 A.2d 354, 363

(D.C. 1979) ("Failure to exercise choice in a situation calling for choice is an abuse of discretion."). *Jackson* did not establish any categorical rule that evidence of PCP use needs to be accompanied by expert testimony elucidating the drug's effects. As with most cases involving a Rule 403 analysis, *Jackson* was concerned with the particular facts before it, so we begin with those.

In *Jackson*, it was the government that sought to present evidence that Jackson had smoked PCP some eighteen hours before he attacked another man. 210 A.3d at 809. For his part, Jackson—who claimed that he acted in self-defense—denied smoking PCP or being under its influence at the time of the incident. On those facts, we held that the trial court abused its discretion when it permitted the government to elicit evidence of Jackson's PCP use long before the incident in question absent any evidence that he remained under its influence eighteen hours later. *Id.* at 808. The evidence was simply irrelevant absent that link, which we opined could be provided by expert evidence given that Jackson himself denied being under the influence of PCP. *Id.* We explained that there was no evidence or any fair inference that Jackson remained under the influence of PCP eighteen hours after smoking it, a "largely speculative" proposition absent some expert evidence about "how PCP continues to affect a particular individual hours after ingestion." *Id.* at 806-07. We further explained that in the absence of expert testimony, the evidence would unfairly

prejudice Jackson, as "[e]vidence of an individual's drug use may inherently have a prejudicial effect," particularly where PCP is concerned. *Id.* at 807.

But *Jackson* did not announce any sweeping rule that parties cannot introduce evidence about PCP use absent expert testimony elucidating its effects. It would have been wrong to do so. *Jackson* was instead standard fare for Rule 403 cases: we simply weighed the probative value of the challenged evidence against its prejudicial force in the particular context of that case. More granularly, we explained why the disputed evidence that the defendant had smoked PCP eighteen hours before the incident had next to no probative value given that massive gap in time and the lack of any evidence or fair inference that the defendant would continue to be under PCP's influence in light of it—an evidentiary gap that we opined could be filled by expert evidence. We then further explained why the unfair prejudicial effect of that evidence against the defendant overwhelmed its minimal probative value so that it was an abuse of discretion to admit it. 210 A.3d at 807-08.

Still, we do not entirely discount the possibility that the trial court was merely inartful in how it framed a discretionary ruling that, on balance, the facts here were so similar to *Jackson* as to justify a similar exercise of discretion in barring the evidence of PCP use in this case. That is a fairly charitable reading of the trial court's ruling, to be sure, but then again if we were merely to correct the trial court's legal

mistake and remand the case for the exercise of discretion prior to any retrial, this same issue might come up again with an attendant years-long delay and waste of judicial resources. So we will assume, for the sake of argument, that the trial court did issue a discretionary ruling and now explain why, under any proper exercise of discretion, Jones should have been permitted to introduce evidence of his own PCP use—putting Pitt's PCP use aside for the moment—and the effects the drug had on him. *See Williams v. United States*, 884 A.2d 587, 603 (D.C. 2005) (declining to remand discretionary question for assessment "under the proper standard" where "the trial court had 'but one option'" (quoting *Newman v. United States*, 705 A.2d 246, 259 (D.C.1997))).

This case is very different from *Jackson* in three critical respects: the first two differences relate to how the evidence here was far more probative than the evidence in *Jackson* was, and the third relates to why it was far less prejudicial. First, and most importantly, Jones himself sought to offer direct testimony about the effects that PCP had on him on the night in question, so there was no need for expert testimony to link that PCP use to the relevant questions in the case. Second, Jones sought to introduce evidence that both he and Pitt had smoked PCP in the *minutes* before he attacked Pitt, not many hours earlier, so there was nothing particularly speculative in positing that he and Pitt would remain under the drug's effects so shortly after smoking it. Third, Jones was the proponent of the PCP evidence, so

that the prejudicial effects that evidence would have on him should have been entirely discounted from the Rule 403 calculus. We now elaborate on each point.

First is that unlike in *Jackson*, Jones himself sought to testify directly about the effects that his PCP use had on him on the night in question. The jurors did not need to be personally familiar with the effects of PCP in order for this evidence to have probative value, as was the case in *Jackson*. All they had to do was evaluate whether they found Jones's account of the PCP's effects on him on the night in question to be credible, a task that is right in the jury's wheelhouse. *See Morales v. United States*, 248 A.3d 161, 185 (D.C. 2021) ("One of the jury's core functions is to weigh the credibility of trial witnesses."). Admittedly, and as some support for the trial court's ruling, at one point *Jackson* says "that expert testimony ordinarily is required when the key question is whether and how PCP continues to affect a particular individual hours after ingestion." 210 A.3d at 806. But ordinarily does not mean always, and that pronouncement must be put in the particular context in which it arose in *Jackson*—where the purported PCP user denied being under any effects of the drug, so that some other witness would have to provide that evidentiary link (with an expert being the most likely candidate). *Id.* That rule of thumb does not apply where the PCP user seeks to provide direct testimony about the effects PCP had on himself, leaving jurors with their routine role of assessing his credibility. As Jones correctly notes, the government does not cite a single case in which any

court has precluded a person from testifying about the effect an intoxicating substance had on themselves. And we are not aware of any, at least not where intoxication was a relevant issue in the case (as it indisputably was here). If Jones had sought to testify that he was high on the honey he put in his tea, he should have been permitted to do so, regardless of whether jurors' common experience left them with any familiarity with hallucinogenic honey.[1] Witnesses are not cabined to testifying about topics with which jurors have direct familiarity.

Second, the evidence here was that Jones and Pitt had smoked PCP in the mere minutes before the attack, not many hours beforehand as in *Jackson*. The evidence was thus far more probative in this case because the PCP use was much closer in time to the relevant attack, providing a far readier inference that both Jones and Pitt remained under the influence of PCP at the time. We do not doubt *Jackson*'s pronouncement that it would be highly speculative for a jury to conclude that somebody was under the influence of PCP eighteen hours after smoking it, where

---

[1] There is in fact a hallucinogenic honey, sometimes called "mad honey," harvested largely from the mountains of Nepal and Turkey. This is not to say that a trial court in appropriate circumstances might not limit a defendant's testimony which extends not only to his or her mental state but beyond to ascribing the cause thereof. If there were no evidentiary basis for that ascription, and especially if it were quite far flung, then perhaps a trial judge might reasonably exercise their discretion to preclude it absent more (possibly expert) support. But that would present a very different issue than this case.

there was no direct evidence on that point and no common knowledge that PCP tends to impair a person for a full eighteen hours. But it is not nearly as speculative to infer that a person who has just smoked PCP some minutes earlier is likely to remain under the drug's effects. In fact—even putting aside Jones's proffered testimony that he remained under the effects of PCP at the time of the attack—there was direct evidence here showing that PCP seemed to render Pitt immobile for a full ten minutes after he first appears to smoke it on the Metro's surveillance video. That is pretty strong support for the commonsense inference that PCP's effects are not so short lived as to wear off completely within a matter of minutes.

Third, on the prejudice side of the scale and unlike in *Jackson*, Jones was the party seeking to introduce evidence of his own PCP use. That is important because any prejudice that evidence would have posed as to him is immaterial to the Rule 403 inquiry—it cannot be deemed "unfair prejudice" against him because he welcomed it. *See generally Cox v. United States*, 325 A.3d 360, 371 (D.C. 2024) (Rule 403 is concerned with "'unfair prejudice' . . . to the *opposing party*" (emphasis added) (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977))); *see also* 22A Wright & Miller, Fed. Prac. & Proc. Evid. § 5215.2 (2d ed. 2025) (expressing the view that though some "courts have used Rule 403 to paternalistically protect a party from its own evidence. . . . the better-reasoned cases reject such judicial paternalism"). In *Jackson*, by contrast, the defendant opposed

introducing evidence of his PCP use eighteen hours earlier, and we correctly explained how enormously prejudicial that evidence would have been against him, given that the news is replete with stories "describing individuals on PCP as violent and impulsive." 210 A.3d at 807. There is no such concern here given that Jones was the proponent of the evidence about his own PCP use. That leaves us to assess only the unfair prejudice that evidence of Jones's PCP use would have posed against the government's case, and we do not discern any.

The government counters (as to this third point) that absent a defense expert, it would have been hamstrung in its ability to challenge Jones's account that he was so high on PCP at the time of the attack as to lack any ability to form the intent to kill. We fail to see how. The government had the typical crucible of cross-examination to undercut Jones's account, aided by a potent line of attack that his testimony about being disconnected from reality was self-serving. Moreover, nothing prevented the government from presenting its own expert to counter Jones's testimony and cast doubt on his intoxication defense, provided it could procure one. There was no unfair prejudice here that one could conclude substantially outweighs the probative value of this testimony. *Walker v. United States*, 167 A.3d 1191, 1215 n.76 (D.C. 2017) ("[P]robative evidence should not be excluded because of crabbed notions of relevance or excessive mistrust of juries." (quoting *Comford v. United States*, 947 A.2d 1181, 1187 (D.C. 2008))).

In sum, the trial court erred when it precluded Jones from introducing evidence that he was high on PCP at the time of the attack. That evidence should have been permitted under any proper exercise of discretion given its strong probative value to a central issue in this case with no countervailing prejudice.

As to the evidence of Pitt's PCP use, we reach only the more modest conclusion that the trial court erred to the extent its ruling was based on a rigid and mistaken reading of *Jackson*. We remain agnostic on whether that is what the trial court did, and we do not opine on whether the trial court, disabused of its misreading of *Jackson*, might have properly excluded evidence of Pitt's PCP use. We therefore do not factor this potential error into our harm analysis below. But suffice it to say that if this issue comes up again on remand, evidence of Pitt's PCP use should be subjected to a standard Rule 403 balancing in light of the principles articulated above and on the particular facts of this case—*Jackson* does not direct the result of that balancing.

### B. The error was harmful

The government persists that any error in precluding evidence of Jones's PCP use was harmless in light of the remaining evidence. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). We disagree as to the AWIK while armed conviction.

The parties agree that the error here is subject to the harm analysis applicable to non-constitutional errors, under which the controlling question is whether we can say "with fair assurance" that the error did not "substantially sway[]" the judgment. *Id.* In making this assessment, "our focus is on the likely impact . . . on the jury's verdict." *Robinson v. United States*, 50 A.3d 508, 528 (D.C. 2012) (quoting *Settles v. United States*, 615 A.2d 1105, 1109 (D.C. 1992)).

A defendant's voluntary intoxication may negate the mens rea element of specific intent crimes only if the defendant "has reached a point of incapacitating intoxication." *Washington v. United States*, 689 A.2d 568, 573 (D.C. 1997) (quoting *Smith v. United States*, 309 A.2d 58, 59 (D.C. 1973)). This is a high bar. *Wilson-Bey v. United States*, 903 A.2d 818, 844-45 (D.C. 2006) (en banc) ("The evidence required to support a voluntary intoxication defense, however, is quite exacting— the record must demonstrate 'such a degree of complete [impairment] that a person is incapable of forming the necessary intent essential to the commission of the crime charged.'" (quoting *Smith*, 309 A.2d at 59)). Nonetheless, a jury may not convict a defendant of AWIK if it accepts that he was so intoxicated during the assault that he could not have formed the specific intent to kill. *Washington*, 689 A.2d at 573. The harm here thus turns on whether the improper exclusion of Jones's evidence that he was high on PCP at the time of the assault stood a reasonable chance of affecting the jury's rejection of his voluntary intoxication defense.

We cannot say, with fair assurance, that the jury would have disbelieved Jones's account that he was so high on PCP at the time of the attack that he lacked the ability to form the intent to kill, had he not been precluded from introducing the evidence in support of that defense. While the jury clearly did not believe that Jones lacked the ability to form the intent to kill when they thought he was merely drunk on alcohol and high on marijuana, evidence that Jones was in fact high on PCP stood a reasonable chance of altering that view. *See Kigozi v. United States*, 55 A.3d 643, 651 (D.C. 2012) (describing PCP as "a mind-altering drug").

The jury was not only given an incomplete picture of the substances Jones was impaired by at the time of the attack, but an affirmatively misleading one by virtue of the court's ruling, as jurors were left to assess his intoxication defense as if he had ingested only alcohol and marijuana. This false impression may have rendered Jones's intoxication defense particularly implausible to jurors, many of whom likely drew on their more muted experiences with alcohol and/or marijuana when assessing the plausibility of Jones's defense. For instance, jurors might have interpreted the fact that Jones jumped right back to his feet after being shot in the chest as some evidence that he was not terribly drunk or high on marijuana—those substances often render people drowsy and uncoordinated, not amped up. Had they learned that PCP was doing the heavy lifting in Jones's drug cocktail, jurors might have instead interpreted that as evidence of Jones being especially high on PCP at

the time. Jurors also might have doubted, based on their knowledge or experiences, that alcohol and marijuana can leave one dissociative while physically functional; they might have had far less reason to doubt that about PCP.

The government curiously rebuts that "Jones has never suggested that" he smoked PCP after arriving at the Anacostia Metro station, so that any PCP use must have been several hours before the attack, and that the jury would thus be likely to discount the drug's effects given that lapse in time. The government misreads the record. Jones proffered, in the clearest terms, that he and Pitt had "recently" been smoking PCP "right outside the Anacostia Metro station," just before the assault, an account that other evidence corroborated. The surveillance video, showing Jones and Pitt repeatedly lighting up a cigarette and passing it back-and-forth—once immediately leading to Pitt's protracted collapse, then again just before the pair returned to the Metro platform—supports Jones's proffered testimony that they were smoking PCP in the minutes before the attack. And the fact that Pitt was found with several vials of PCP in his pocket is some further corroboration.

The government also counters that Jones's detailed testimony about his state of mind at the time of the assault "refutes any suggestion that he was incapable of forming the specific intent" to kill. Not really. The jury did not believe Jones's account—it rejected his self-defense claim—so it clearly did not credit his purported

memory of the events. It would not be hard for jurors to believe that Jones was lying when he purported to remember a self-exonerating version of the underlying incident when he in fact was so high as to be dissociative and, like Pitt, in fact remembered nothing about the attack itself.

The government further counters that Jones's actions before and during the assault belied his voluntary intoxication defense such that evidence that he was high on PCP would have made no difference. The government points to Jones's "methodical and deliberate" stabs as proof that he knew what he was doing. But Jones's sudden, public assault of his severely intoxicated friend was hardly a "carefully designed and implemented scheme that would be difficult to attribute to someone completely incapacitated by intoxication." *Bell v. United States*, 950 A.2d 56, 65 (D.C. 2008). People in fugue states can take seemingly deliberate actions. Whether Jones was in such a state is a question for the jury, apprised of all the relevant evidence, which it did not hear at Jones's first trial.

### III. Conclusion

For the foregoing reasons, we vacate Jones's AWIK while armed conviction, we affirm his aggravated assault while armed and carrying a dangerous weapon convictions, and we remand for further proceedings consistent with this opinion. If the government chooses to retry Jones—it vaguely suggests in its brief that it will

not given that our disposition does not directly affect his bottom-line sentence—(1) Jones should be permitted to introduce evidence of his PCP use and (2) the trial court should reconsider permitting evidence of Pitt's PCP use consistent with the principles in this opinion.

*So ordered.*